Maria Elena MARTINEZ, Individually and as Personal Representative of the Estate of Santos Roque Rocha, deceased, Plaintiff Below, Appellant,

v.

E.I. DuPONT DE NEMOURS AND COMPANY, INC., Defendant Below, Appellee.

No. 669, 2012.

Supreme Court of Delaware.

Submitted: Nov. 6, 2013.
Decided: Feb. 20, 2014.
Dissent Revised: March 4, 2014.

Thomas C. Crumplar, Esquire (argued) and Jordan J. Perry, Esquire, Jacobs &

Crumplar, P.A., Wilmington, Delaware, for appellant Maria Elena Martinez.

John C. Phillips, Jr., Esquire (argued) and David A. Bilson, Esquire, Phillips, Goldman & Spence, P.A., Wilmington, Delaware, for appellee, E.I. du Pont de Nemours and Company.

Before HOLLAND, BERGER and JACOBS, Justices, STRINE, Chancellor[1] and NOBLE, Vice Chancellor.[2]

HOLLAND, Justice, for the majority:

This case is one of approximately thirty-two cases filed against the defendant-appellee, E.I. du Pont de Nemours and Company, Inc. ("DuPont"), by Argentine nationals who claim that they were exposed to asbestos while working in textile plants located in Berazategui, Argentina and Mercedes, Argentina. At the time of the alleged exposures, which began in the early 1960's, the plants were owned by DuPont Argentina Sociedad Anomina ("DASA"). DASA, now known as DASRL, has its principal place of business in Argentina, and is a great-great grand-subsidiary of DuPont.

The plaintiff-appellant, Maria Elena Martinez ("Martinez"), is the wife of now deceased Argentine textile plant worker Santos Roque Rocha ("Rocha"). Her complaint alleges that her husband suffered injuries while employed by DASRL. The Superior Court dismissed Martinez's complaint pursuant to Superior Court Civil Rules 8 and 9 for inadequate pleading, for failure to state a claim under Superior Court Civil Rule 12(b)(6), for failure to join a necessary party under Superior Court Civil Rule 19, and on *forum non conveniens* grounds.

---

**1.** Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

**2.** *Id.*

In this direct appeal, Martinez challenges each of the Superior Court's independent and alternate grounds for dismissal. We have concluded that the Superior Court properly exercised its discretion in dismissing the Complaint on the basis of *forum non conveniens.* Therefore, we do not reach or address the other issues.

A *forum non conveniens* motion is addressed to the trial court's sound discretion.[3] On review, this Court determines "whether the findings and conclusions of the Superior Court are supported by the record and are the product of an orderly and logical [reasoning] process. If they are, whether or not reasonable people could differ on the conclusions to be drawn from the record, this Court must affirm. . . ."[4]

Delaware's jurisprudence in *forum non conveniens* cases is well established. Where there is no issue of prior pendency of the same action in another jurisdiction, our analysis is guided by what are known as the "*Cryo–Maid* factors":[5]

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[6]

In the *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. Partnership* case,[7] this Court explained that:

A plaintiff's choice of forum should not be defeated except in the rare case where the defendant establishes, through the *Cryo–Maid* factors, overwhelming hardship and inconvenience. It is not enough that all of the *Cryo–Maid* factors may favor defendant. The trial court must consider the weight of those factors in the particular case and determine whether any or all of them truly cause both inconvenience and hardship.

Accordingly, to prevail under the *forum non conveniens* doctrine, a defendant must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that the defendant will face "overwhelming hardship" if the lawsuit proceeds in Delaware.[8] The overwhelming hardship requirement involves a discretionary determination that has challenged this State's trial courts for many years in their efforts to make consistent dispositions of *forum non conveniens* motions to dismiss. Because the determination of such motions depends on a proper application of the "overwhelming hard-

---

**3.** *See Warburg, Pincus Ventures, L.P. v. Schrapper,* 774 A.2d 264, 269 (Del.2001).

**4.** *Williams Gas Supply Co. v. Apache Corp.,* 594 A.2d 34, 37 (Del.1991) (citing *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964)).

**5.** *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964).

**6.** *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1198–99 (Del.1997).

**7.** *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship,* 669 A.2d 104, 105 (Del.1995).

**8.** *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d 832, 835 (Del.1999).

ship" standard, we take this opportunity to review its origins and meaning.

This Court has held that a defendant can satisfy the overwhelming hardship standard by convincing the trial court that the case before it "is one of those rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship...." [9] Although a motion to dismiss on *forum non conveniens* grounds is addressed to the sound discretion of the trial judge,[10] on several occasions this Court has reversed a trial court determination that the overwhelming hardship standard was satisfied.[11] The experience in those cases have led some trial judges to conclude that term "overwhelming hardship" suggests an insurmountable burden for defendants.[12] That perception, although understandable, is not accurate.

■ We hold, as did the Court of Chancery in *IM2 Merchandising & Manufacturing, Inc. v. Tirex Corp.*,[13] and as the Superior Court determined in this case, that "a more restrained meaning is at the essence of the [overwhelming hardship] standard."[14] As we explained in *Ison v. E.I. DuPont de Nemours & Co.*, the overwhelming hardship standard is not intended to be preclusive. Rather, it is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden.[15]

The evolution of the adjective "overwhelming" in this context is consistent with the distinction between preclusive and stringent. As we acknowledged in *Ison,* the overwhelming hardship standard arose out of this Court's 1965 decision in *Kolber v. Holyoke Shares, Inc.*[16] There, we summarized the proper application of the *forum non conveniens* dismissal standard as follows: "The dismissal of an action on the basis of the [*forum non conveniens*] doctrine, and the ultimate defeat of the plaintiff's choice of forum, may occur only in the rare case in which the combination and weight of the factors to be considered balance overwhelmingly in favor of the defendant."[17] Similarly, in *Williams Gas Supply Co. v. Apache Corp.*,[18] this Court affirmed a dismissal of a first-filed Delaware action on *forum non conveniens* grounds. We stated that:

[T]he Superior Court placed the burden upon [the defendant] to prove inconvenience and hardship by demonstrating that the combination and weight of the appropriate factors in a traditional *forum non conveniens* analysis weighed overwhelmingly in favor of its motion to

9. *Id.*

10. *Parvin v. Kaufmann,* 236 A.2d 425, 427 (Del.1967).

11. *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d at 834–35; *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1198–99 (Del.1997); *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship,* 669 A.2d at 105.

12. *See Friedman v. Alcatel Alsthom,* 752 A.2d 544, 552 (Del.Ch.1999) ("Despite occasional references to the trial court's discretion, little room for exercising that discretion exists....").

13. *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.,* 2000 WL 1664168 (Del.Ch. Nov. 2, 2000).

14. *Id.* at *8

15. *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d at 843.

16. *Kolber v. Holyoke Shares, Inc.,* 213 A.2d 444 (Del.1965).

17. *Id.* at 447.

18. *Williams Gas Supply Co. v. Apache Corp.,* 594 A.2d 34 (Del.1991).

dismiss or stay the plaintiff's first filed Delaware action the deference to which a valid first filed action is entitled.[19]

In *Ison,* this Court also cited several other cases, including the "well-reasoned"[20] opinion of the Connecticut Supreme Court in *Picketts v. International Playtex, Inc.*[21] *Picketts* held that the plaintiff's "choice of forum ... should be respected unless equity weighs strongly in favor of the defendant."[22] In *Ison,* we stated that the description of the defendant's burden in *Picketts* was "consistent with the 'overwhelming hardship' language of the Delaware jurisprudence."[23] We also noted that our earlier decision in *Parvin v. Kaufmann*[24] had relied on the United States Supreme Court's decision in *Gulf Oil Corp. v. Gilbert,*[25] which required that a plaintiff's choice of forum be respected "unless the balance is *strongly* in favor of the defendant...."[26]

To summarize, although the overwhelming hardship standard is stringent, it is not preclusive. Accordingly, in deciding *forum non conveniens* motions to dismiss, Delaware trial judges must decide whether the defendants have shown that the *forum non conveniens* factors weigh so overwhelmingly in their favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to them.

■ The Superior Court concluded that the unique circumstances presented by this foreign asbestos case created the "overwhelming hardship" required for a *forum non conveniens* dismissal under Delaware law.[27] We agree with that conclusion.

Although Martinez challenges the Superior Court's *forum non conveniens* determination, she has not demonstrated that the dismissal constituted an abuse of discretion. The Superior Court specifically addressed this Court's *forum non conveniens* jurisprudence, acknowledging the high burden borne by a defendant seeking dismissal on that basis. As the record reflects, the Superior Court understood and conducted a detailed analysis of each of the *Cryo–Maid* factors, focusing on the multiple, practical problems and costs that litigating these Argentine occupational injury cases in Delaware would impose on DuPont and on the courts of Delaware.

More specifically, the Superior Court acted fully within its discretion under our precedent by giving weight to the novelty and importance of the legal issues presented in this case—especially since the governing law is set forth in Spanish, not English. That court permissibly concluded that those issues were more appropriately determined by the courts of the only

19. *Id.* at 36.

20. *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d at 843.

21. *Picketts v. Int'l Playtex, Inc.,* 215 Conn. 490, 576 A.2d 518 (1990).

22. *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d at 842 (quoting *Picketts v. Int'l Playtex, Inc.,* 576 A.2d at 524–25) (quotations omitted).

23. *Id.*

24. *Parvin v. Kaufmann,* 236 A.2d 425, 427 (Del.1967).

25. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

26. *Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d at 842 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. 839) (emphasis added in *Ison* ).

27. *Martinez v. E.I. du Pont de Nemours & Co.,* 2012 WL 6840578 at *34 (analyzing the case under the factors laid out in *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del. 1964)).

sovereign whose law is at stake—Argentina—just as this Court has recognized that novel or important issues of Delaware law are best determined by Delaware courts.[28] That is especially so because the issue of when parent corporations can be held liable in circumstances like those presented here has not been uniformly decided by the courts of the U.S. states that have addressed the issue.[29]

Moreover, the policy issue underlying this case implicates important interests of Argentina itself, because its resolution could influence the willingness of corporations to conduct operations in Argentina.[30] This specific lawsuit was a test case for a large number of cases facing DuPont that raise the same novel issue of Argentine law. For that reason Argentina's, interest in having its law established by courts

**28.** *See, e.g., Sternberg v. O'Neil,* 550 A.2d 1105, 1124–25 (Del.1988) ("The Delaware courts and legislature have long recognized a 'need for consistency and certainty in the interpretation and application of Delaware corporation law.' ") (quoting *Armstrong v. Pomerance,* 423 A.2d 174, 178 (Del.1980)) (explaining that allowing important or novel questions of Delaware law to be resolved by other courts "might create excessive uncertainty about the meaning of the Delaware law as a result of too many forums interpreting it since there would be no certiorari process available to the Delaware Supreme Court to resolve conflicts"); *MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.,* 1985 WL 21129, at *2 (Del.Ch. Oct. 9, 1985) ("[N]ovel and substantial issues of Delaware corporate law ... are best resolved in a Delaware court.").

**29.** *Compare Forsythe v. Clark USA, Inc.,* 224 Ill.2d 274, 290, 309 Ill.Dec. 361, 864 N.E.2d 227 (2007) ("Where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability."), *with Muniz v. Nat'l Can Corp.,* 737 F.2d 145, 148 (1st Cir.1984) ("A parent corporation may be liable for unsafe conditions at a subsidiary *only* if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary.") (emphasis added), *and Born v. Simonds Int'l Corp.,* 2009 WL 5905396, at *7 (Mass.Super.Ct. Dec. 30, 2009) ("If direct participant liability exists under Massachusetts law, it does so only when the parent engages in "eccentric" control over the facilities of the subsidiary and thereby foreseeably causes an unsafe working condition."); *see also* Stephen M. Bainbridge, *Abolishing Veil Piercing,* 26 J.

Corp. L. 479, 506–09, 535 (2001) (describing three different standards used by various U.S. state courts to determine whether the corporate veil has been pierced and arguing that the doctrine of veil piercing should be abolished and replaced with a direct liability approach).

**30.** *See Ison v. E.I. DuPont de Nemours and Co.,* 729 A.2d 832, 844 (Del.1999) (noting that "home countries have a significant interest" in setting the safety standards that apply in their own country); *see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.,* 34 A.3d 1074, 1083 (2011) ("[T]he Court is mindful of the important interest of affording comity to foreign business law governing the internal affairs of a foreign corporation"). A nation's interest in applying its own law is recognized under federal jurisprudence as well. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.").

Under federal jurisprudence, this type of consideration would be treated as a "public interest" factor. *Id.* Although we believe that the Superior Court acted within its discretion to consider this fact under the fourth *Cryo–Maid* factor—which asks whether the controversy is dependent upon the application of Delaware law—we note that this and similar considerations may also be properly considered, as we discuss later, by trial courts under the sixth *Cryo–Maid* factor, which instructs courts to consider "all other practical problems that would make the trial of the case easy, expeditious and inexpensive." *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964).

having definitive interpretative authority was properly recognized by the trial court as important.[31] Of related significance, the Superior Court properly exercised its discretion by recognizing that the plaintiff was not a resident of Delaware and that the injury her late husband allegedly suffered occurred in Argentina, not Delaware. Under our case law precedent, the presumption that the plaintiff's choice of forum should be respected "is not as strong in the case of a foreign national plaintiff as in the case of a plaintiff who resides in the forum."[32]

We do not premise our affirmance on a conclusion that the Superior Court correctly decided that DuPont was not a proper defendant. Rather, we uphold the Superior Court's proper focus on a difficult and open issue of Argentine law, as supportive of that court's repeatedly expressed concerns about the resulting hardship DuPont would face. Specifically, a Delaware court was being asked to decide complex and unsettled issues of Argentine tort law, based on expert testimony extrapolating from sources of law expressed in a foreign language, that do not arise out of factual contexts like those presented in these asbestos exposure cases.[33] The Superior

**31.** *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *10 (Del.Ch. Nov. 2, 2000) ("The great weight given to a plaintiff's interest in having novel Delaware law questions decided in our own courts under the *Cryo–Maid* test suggests that a defendant's interest in having the courts of the jurisdiction of the governing law decide important legal issues ought also be given some weight.").

**32.** *Ison v. E.I. DuPont de Nemours and Co.*, 729 A.2d 832, 835 (Del.1999); *see also Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 268 (Del.2001).

**33.** *Martinez v. E.I. DuPont de Nemours & Co.*, 82 A.3d 1, 33–34 (Del.Super.2012) ("[P]laintiff concedes that her claims are governed by Argentine law. This factor does indeed work a significant hardship upon DuPont because it will incur increased expense, inconvenience, and delay.... While Delaware courts are frequently called upon to interpret and apply foreign laws, when those laws are in Spanish and have been enacted in the context of a civil law system originating from the Napoleonic Code, the application of foreign law imposes that much more of a hardship. Even considering the fact that DuPont is a global corporation that is accustomed to litigation on an international level, and irrespective of the importance to Delaware of providing litigants with 'a neutral forum to adjudicate commercial disputes against Delaware entities,' where the dispute involves foreign law and the parties and conduct are centered in a foreign jurisdiction, this factor definitely does con-

tribute to DuPont's hardship. This test case and the other cases filed by Argentine national plaintiffs are not seeking the expertise of Delaware courts to adjudicate a commercial dispute by an experienced and neutral tribunal. These are toxic tort cases, not complex commercial lawsuits and the Plaintiffs are taking advantage of this State's extremely lax *forum non conveniens* jurisprudence to target the great-great grandparent corporation as the wrongdoer, rather than its indirectly owned Argentine subsidiary, in order to utilize the Delaware courts, without any regard to the hardship to its own corporate citizen."); *id.* at 9–10 (noting that "none of the experts were able to point to any case law in Argentina supporting acceptance of the theory"); *id.* at 18 ("Reasoning that if the direct participant doctrine exists at all in Argentina, it would be in the Argentine Code, both of DuPont's Argentine legal experts, Professor Keith Rosenn and Professor Alejandro Garro, conducted extensive statutory research. Neither was able to find any provision establishing existence of the doctrine. They also conducted thorough research in an effort to find Argentine case law that might recognize the concept, but no such cases were found."); *id.* at 19 (noting that "when questioned directly about any authority upon which they relied, both [plaintiff's] experts ... were not able to identify any statutory or decisional Argentine law recognizing the theory"); *id.* at 19 ("Plaintiff's experts' opinions as to the existence of the doctrine in Argentina were based upon an amorphous obligation of safety contained in a draft statute that was never enacted into law and an article by an Argentine

Court also properly recognized that no countervailing local interest exists in this case because "the Plaintiff is not a resident of Delaware, was not injured in Delaware, and ... the Defendant's state of incorporation has no rational connection to the cause of action." [34]

When read in full context, the Superior Court's ruling clearly focused on the implicit and logical corollary of the fourth

*Cryo–Maid* factor, which instructs courts to consider "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction." [35] If, as our jurisprudence holds, significant weight should be accorded the neutral principle that important and novel issues of Delaware law are best decided by Delaware courts,[36]

priest that is basically a philosophical statement that individuals generally have a right to be free from unwarranted governmental intrusion.").

34. *Id.* at 38 ("There is no local controversy, and 'home' is not Delaware to Plaintiff, Plaintiff's decedent, or the relevant employer DASRL."); *see also id.* at 14 ("[T]his Court should not be burdened with cases where the Defendant's state of incorporation is being manipulated to confer jurisdiction on the wrong party."); *id.* at 33 ("Delaware—DuPont's State of incorporation—has no rational connection to the cause of action in this case and is clearly being used as a subterfuge to avoid suing the decedent's actual Argentine employer, who should be named as the defendant herein.").

35. *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964); *see also Apple Computer, Inc. v. Exponential Tech., Inc.,* 1999 WL 39547 (Del.Ch. Jan. 21, 1999) ("The *Cryo-Maid* Court added the Delaware law element to motion-to-stay analysis to recognize this state's policy of deciding questions of Delaware law rather than having another jurisdiction handle them.").

36. This principle has been recognized and applied in the corporate law context. *See, e.g., Sternberg v. O'Neil,* 550 A.2d 1105, 1124–25 (Del.1988) ("Delaware has a legitimate interest in providing a forum for hearing and applying Delaware law to a double derivative claim related to the internal operation of a wholly owned Delaware subsidiary."); *Ryan v. Gifford,* 918 A.2d 341, 349–50 (Del.Ch. 2007) ("Delaware courts have a 'significant and substantial interest in overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations.' This interest increases greatly in actions addressing

novel issues.") (quoting *In re Chambers Dev. Co. S'holders Litig.,* 1993 WL 179335, at *8 (Del.Ch.1993)); *Brandin v. Deason,* 941 A.2d 1020 (Del.Ch.2007) ("First, Delaware law controls the entirety of Brandin's lawsuit.... Despite the defendants' arguments to the contrary, the law governing all of the intricacies potentially associated with stock options backdating claims is far from well-settled, *and Delaware courts have a sizable interest in resolving such novel issues to promote uniformity and clarity in the law that governs a great number of corporations*") (emphasis added); *Rosen v. Wind River Systems, Inc.,* 2009 WL 1856460, at *6 (Del.Ch. June 26, 2009) ("The [applicable law] factor strongly favors Delaware. Although this action may not involve, on its face, cutting-edge or terribly novel issues of Delaware corporate law, it does implicate important aspects of Delaware law"); *Rapoport v. Litig. Trust of MDIP Inc.,* 2005 WL 3277911, at *5 (Del.Ch. Nov. 23, 2005) (noting that "[s]uch questions of substantive Delaware corporate law 'are more properly decided here rather than another jurisdiction, even though the other jurisdiction's courts are quite capable of applying Delaware law and rendering prompt justice'") (quoting *In re Walt Disney Co. Deriv. Litig.,* 1997 WL 118402, at *3 (Del.Ch. Mar. 13, 1997)); *MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.,* 1985 WL 21129, at *2 (Del.Ch.1985) ("[N]ovel and substantial issues of Delaware corporate law ... are best resolved in a Delaware court."). Even in *Taylor,* when this Court stated that "it is not unusual for courts to wrestle with open questions of the law of sister states or foreign countries," *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1200 (Del. 1997), it directly relied on *Draper v. Gardner Defined Plan Trust,* 625 A.2d 859, 868 n. 12 (Del.1993), which was careful to clarify that when foreign courts were deciding important but unclear issues of Delaware law, the ques-

then it logically follows that our courts must acknowledge that important and novel issues of other sovereigns are best determined by their courts where practicable.[37] To state it differently, just as our cases have recognized the plaintiff's substantial interest in having important open questions of Delaware law decided by our courts, a principled application of that reasoning must give reciprocal weight to a defendant's interest in having important issues of foreign law decided by the courts whose law governs the case.[38] Thus,

---

tion could be certified to the Delaware Supreme Court.

**37.** *TA Instruments–Waters, LLC v. Univ. of Conn.,* 31 A.3d 1204, 1207 (Del.Ch.2011) ("The claims in this case implicate paramount interests of the State of Connecticut. Although Delaware has an interest in providing a forum for one of its citizens, Connecticut has the far greater interest in this dispute. Under the circumstances, it would not be appropriate for a Delaware court to preempt the ability of a Connecticut court to weigh in...."); *Hamilton Partners, L.P. v. Englard,* 11 A.3d 1180, 1213 (Del.Ch.2010) ("Choice of law under *Cryo–Maid* operates as a proxy for Delaware's interests, and the analysis must address the degree to which Delaware has a particular interest in the subject matter of the case. It therefore includes considerations such as the nature and novelty of questions of law to be answered, the desirability of providing a Delaware forum, and the importance of overseeing the conduct of particular classes of actors and policing against particular types of wrongdoing."); *Diedenhofen–Lennartz v. Diedenhofen,* 931 A.2d 439, 451–52 (Del.Ch. 2007) ("Delaware has a related and equally important interest in affording comity to the courts of other jurisdictions when a dispute arises under foreign business law.... If we expect that other sovereigns will respect our state's overriding interest in the interpretation and enforcement of our entity laws, we must show reciprocal respect."); *Third Ave. Trust v. MBIA Ins. Corp.,* 2009 WL 3465985, at *5 (Del.Ch. Oct. 28, 2009) ("Because of the importance of this question to New York public policy, and the absence of any legitimate interest Delaware has in the question, I believe that an appropriate regard for comity requires this court to abstain and allow the courts of New York to speak on the collateral effect to be given to the determinations of the Superintendent of the New York Insurance Department."); *Texas Instruments Inc. v. Cyrix Corp.,* 1994 WL 96983 (Del.Ch. Mar. 22, 1994) ("A state's interest in applying its own law is a factor deserving of recognition and weight."). Other jurisdictions have also recognized the importance of this principle. *See, e.g., LaSala v. Bank of Cyprus Pub. Co. Ltd.,* 510 F.Supp.2d 246, 263 (S.D.N.Y.2007) (noting that "the law to be applied augments the interest of the forum possessing the applicable law"); *Shin–Etsu Chem. Co., Ltd. v. 3033 ICICI Bank Ltd.,* 9 A.D.3d 171, 178, 777 N.Y.S.2d 69 (2004) ("New York courts have recognized that where a foreign forum has a substantial interest in adjudicating an action, such interest is a factor weighing in favor of dismissal."); *In re Vioxx Litig.,* 395 N.J.Super. 358, 928 A.2d 935, 946 (App.Div.2007) ("If the litigation proceeds in New Jersey, it is unlikely that a New Jersey jury would have any interest in or relationship to plaintiffs' causes of action, insofar as they are based upon regulatory activities and law applicable in the U.K. and not here. While we have no doubt that a New Jersey jury would be capable of applying foreign law, to the extent that it is applicable to plaintiffs' claims, we question why it should be called upon to do so in these cases. Further, New Jersey's interest in having the controversy decided here is lessened by the residence of the plaintiffs abroad and their ingestion, in the U.K., of a prescription drug subject to foreign regulation."); *McClain v. Ill. Cent. Gulf R. Co.,* 121 Ill.2d 278, 117 Ill.Dec. 207, 520 N.E.2d 368, 373–74 (1988) ("The people of Shelby County, Tennessee, have a much stronger interest in seeing that the McClains' action be tried in their community, where the accident occurred and where the plaintiffs resided and worked at the time. Moreover, the plaintiffs do not dispute that Tennessee law would govern the action here, and that State has an interest in applying its law in its own courts. Illinois courts have a corresponding interest in not being burdened with applying foreign law 'unless there are strong policy reasons and unless Illinois has strong connections to the case.' ").

**38.** *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.,* 2000 WL 1664168, at *10 (Del. Ch. Nov. 2, 2000) ("The great weight given to a plaintiff's interest in having novel Delaware

where, as here, the plaintiff in the case is a citizen of a foreign state whose law is at issue, and where, as here, the injury in the case occurred in that foreign state, and the case turns on unsettled issues of foreign law, a trial court may permissibly exercise its discretion under *Cryo–Maid* to weigh appropriately the defendant's interest in obtaining an authoritative ruling from the relevant foreign courts on the legal issue on which its liability hinges, as distinguished from a predictive, non authoritative ruling by our courts. Because the Superior Court was within its discretion in dismissing the case under the *forum non conveniens* doctrine, we believe it is unnecessary and inappropriate to express an opinion on the underlying Argentine law issues, which the Superior Court itself properly felt were "best determined by the Argentine courts."

### *Prior Law Changed*

■ It should be evident from the foregoing discussion that there is tension among our prior *forum non conveniens*

decisions that we cannot ignore. We respect the dissent's differing view as to how those tensions should be reconciled, and recognize that reasonable minds can part company on that point. That said, we conclude, based on the evolution of our case law and insights gleaned from that experience, that some prior decisions gave inadequate weight to the discretionary power of the trial courts to recognize the *Cryo–Maid* factor implicated here—the importance of the right of all parties (not only plaintiffs) to have important, uncertain questions of law decided by the courts whose law is at stake;[39] and to the reality that plaintiffs who are not residents of Delaware, whose injuries did not take place in Delaware, and whose claims are not governed by Delaware law have a less substantial interest in having their claims adjudicated in Delaware.[40] Many of our prior *forum non conveniens* decisions have acknowledged these principles; some have not. We recognize that had the analysis employed and upheld in this case been employed in the latter category of prior *forum non conveniens* cases, the outcome

law questions decided in our own courts under the *Cryo–Maid* test suggests that a defendant's interest in having the courts of the jurisdiction of the governing law decide important legal issues ought also be given some weight."); *see also Aveta Inc. v. Colon*, 942 A.2d 603, 610 (Del.Ch.2008) (noting that the "broad statements [in *Taylor*] notwithstanding, the fact that courts continue to consider this *Cryo–Maid* factor must mean that it retains some viability and that it is possible a defendant can demonstrate overwhelming hardship under it" and dismissing the case because foreign law applied and it created an overwhelming hardship for the defendant); *National Union Fire Ins. Co. of Pittsburgh Pa. v. RLC Corp.*, 449 A.2d 257, 261–62 (Del.Super.1982) (considering the fact that Delaware law applied as a factor that weighed against dismissal).

**39.** *See supra* notes 28, 30–31, 36–37 and accompanying text. *Warburg, Pincus Ventures,*

*L.P. v. Schrapper*, 774 A.2d 264, 269 (Del. 2001) ("[W]hen a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused."); *Gen. Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681, 684 (Del.1964) ("Since we are reviewing here an act of judicial discretion . . . [o]ur function is not to substitute our judgment for his as though we had before us an original application.").

**40.** *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 835 (Del.1999) (explaining that the presumption that a plaintiffs choice of forum should be respected presumption "is not as strong in the case of a foreign national plaintiff as in the case of a plaintiff who resides in the forum"); *see also Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 268 (Del.2001) (recognizing "that the presumption of deference generally accorded a plain-

may perhaps have been different.[41] We need not speculate on that concern, however, because the views expressed in this opinion are intended to operate prospectively, and to serve as guidance in future cases involving circumstances comparable to those presented here.[42]

We take this opportunity to provide additional guidance on a question, left unresolved in *Taylor*, concerning Delaware trial court's inherent authority, to "promote the efficient administration of justice."[43]

As the Superior Court rightly recognized, the "Other Practical Considerations" factor of *Cryo–Maid* is neither hollow in meaning nor rigid in application.[44] The Superior Court has interpreted *Taylor* to hold that, in a "proper case," a Delaware trial court may evaluate "public interest" factors when considering a motion based on *forum non conveniens*.[45]

We decline to adopt a broad mandate that would require a trial court, in all cases, to address public interest factors in

---

tiff's choice of forum 'is not as strong' in the case of a foreign plaintiff").

**41.** *See, Berger v. Intelident Solutions, Inc.*, 906 A.2d 134 (Del.2006) and *Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444 (Del.1965). The dissent states that "... [*Taylor v. LSI Logic Corp.*, 689 A.2d 1196 (Del.1997)] is only one of more than a dozen cases holding that the applicability of foreign law, and all the inconvenience and expense associated with foreign experts, translators, etc., are not important factors that warrant dismissal on the ground of *forum non conveniens*." (Dissent, at 1115). That statement, although in part accurate, does not advance the analysis, because the critical issue is not whether foreign law as such is implicated, but rather whether the issue of foreign law is unsettled. Accordingly, the dissent's reliance upon *Candlewood Timber Grp., LLC v. Pan American Energy, LLC*, 859 A.2d 989 (Del.2004) and *Warburg Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264 (Del. 2001)—neither of which involved open, unsettled issues of foreign law—is misplaced.

**42.** In a tort case such as this it would be counterproductive to the interests of justice to require a tort defendant like the DuPont Company to file a reflexive or anticipatory declaratory judgment action against actual or prospective plaintiffs seeking a declaration that it is not liable. In circumstances such as these, the appropriate way for a defendant to ensure that litigation proceeds in an appropriate forum is to bring a motion to dismiss for *forum non conveniens* when it is sued in a jurisdiction that it contends creates an overwhelming hardship. To the extent that prior cases like *Taylor v. LSI Logic Corp.*, 715 A.2d 837, 842 (Del.1998) have indicated that such defendants must have a prior action pending in another jurisdiction in order to invoke princi-

ples of comity for our Courts to consider their interest in receiving an authoritative ruling from the court whose law is at issue, they are overruled.

**43.** *See Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1201 (Del.1997).

**44.** *See, e.g., Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d at 846 ("Delaware jurisprudence does accord the cost of prosecution factor some weight...."); *Taylor*, 689 A.2d at 1200–01 (noting it was proper for the trial court to have considered the differences between Canadian law and Delaware law in the awarding of attorneys' fees and in the rules of discovery under the "Other Practical Considerations" factor of *Cryo–Maid* but cautioning that these issues "should not, standing alone, be determinative" of the *forum non conveniens* analysis); *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d 263, 270 (Del.Super.Ct.1987) ("Because of the difficulties with regard to obtaining evidence, live testimony, and the like, this is a case where the plaintiffs will not be overly burdened if required to prove their case in Norway, 'but the defendant would be decidedly disadvantaged if forced to litigate in Delaware.'") (citation omitted), *aff'd*, 537 A.2d 190 (Del.1988). *See also In re Asbestos Litig.*, 929 A.2d 373, 388 (Del.Super.Ct.2006) ("[T]he Court cannot concern itself with the plaintiffs' 'subjective motivation' in bringing their claims to Delaware. The Court's focus is, and must be, *vel non* the defendants have established that they will suffer overwhelming hardship by litigating these cases in Delaware.").

**45.** *See, e.g., In re Asbestos Litig.*, 929 A.2d at 389.

its *forum non conveniens* analysis.[46] Nonetheless, we agree that, in cases where it is appropriate, a trial court may weigh the efficient administration of justice and analogous considerations under the rubric of the "Other Practical Considerations" *Cryo–Maid* factor. If a court determines that it would be extraordinarily expensive and cumbersome for a defendant to litigate a case in Delaware, that may constitute not only serious hardship to the defendant, but also concomitant, serious, and practical problems that would make it, in the language of *Cryo–Maid,* not "easy, expeditious and inexpensive" [47] for the Delaware court to retain jurisdiction. This public interest factor will seldom, in isolation, be dispositive of whether dismissal on the grounds of *forum non conveniens* is warranted.

Accordingly, it was not an abuse of discretion for the Superior Court to conclude, based on its review of the facts and circumstances presented, and without consideration of other potential lawsuits, that this factor favored DuPont because it would be extraordinarily expensive, cumbersome, and inconsistent with the efficient administration of justice for DuPont to litigate these 32 related matters in Delaware.

### Conclusion

For these and the other substantial reasons articulated by the Superior Court, we hold that the Superior Court acted within its discretion in determining that the relevant *forum non conveniens* analysis tipped overwhelmingly in favor of dismissal.

Thus, we affirm the judgment of the Superior Court on the basis of the *forum non conveniens* analysis set forth in its opinion dated December 5, 2012.[48]

The dissent asserts that our majority decision is driven, not from a genuine difference of opinion regarding the proper direction of *forum non conveniens* law, but rather from a hidden agenda of safeguarding Delaware's corporate franchise. We disclaim any such hidden motive or agenda, which we agree should play no role in this *forum non conveniens* debate.

BERGER, Justice, dissenting:

The majority holds that the trial court acted within its discretion in granting DuPont's motion to dismiss on the basis of *forum non conveniens.* After reviewing the well established Delaware law, and noting that the trial court applied each of the *Cryo–Maid* [49] factors, the majority concludes that DuPont would face overwhelming hardship if forced to litigate in Delaware. The opinion is unlike any in recent history, and it is a cause for concern.

In order to make a statement about Delaware's corporate franchise, the majority announces a non-existent "tension among our prior *forum non conveniens* decisions that we cannot ignore." [50] The majority then disregards *stare decisis,* overrules settled law, and focuses on an issue of Argentine law, which may not be at all novel or difficult, as a basis to find "overwhelming hardship." In the past,

---

**46.** *Contra Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *Plum v. Tampax, Inc.,* 399 Pa. 553, 160 A.2d 549, 553–54 (1960).

**47.** *See Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964).

**48.** *Martinez v. E.I. DuPont de Nemours & Co.,* 82 A.3d 1 (Del.Super.2012).

**49.** *See Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1198–99 (Del.1997).

**50.** Opinion at 1111.

this Court has not used its decisions to send messages on other subjects. In the past, this Court has not changed the law without a compelling reason. In the past, this Court has been forthright in its analysis of the trial court's decision and its own precedent. The majority opinion takes an unsettling new approach to this Court's decisionmaking.

At the outset, the majority reviews the "well established" Delaware *forum non conveniens* law. In that process, the majority relies on such cases as *Ison v. E.I. DuPont de Nemours & Co.*[51] to demonstrate that the "overwhelming hardship" standard is not preclusive, and that a non-resident plaintiff's choice of forum is not as strong as that of a resident plaintiff. One would think, from reading the majority opinion, that the *Ison* case was dismissed on *forum non conveniens* grounds. It was not. Moreover, the relevant facts here are very similar to *Ison,* and other cases, where this Court refused to find "overwhelming hardship."[52]

The trial court apparently recognized that dismissal would not be appropriate under existing law. Although it reviewed the six *Cryo–Maid* factors, the trial court stated that DuPont faces overwhelming hardship because it should not be a defendant:

> The *real reason* that DuPont would be subject to overwhelming hardship ... is not because of the problems relating to access to proof or in translating most of the testimony and documents from Spanish to English. It is because it is not DuPont—but DASRL—who employed Rocha and who owned and operated the plant and premises where he was allegedly exposed to asbestos. This circumstance ... is at the very heart of this Court's *forum non conveniens* analysis.... [T]he burden of litigating in this forum is so severe as to result in manifest hardship to DuPont because it should not have been named as a defendant in the first place.[53]

Whether Martinez sued the wrong defendant has no bearing on whether DuPont will suffer overwhelming hardship if forced to litigate in Delaware. DuPont's status as a proper defendant requires an independent legal analysis that is separate from a *forum non conveniens* analysis.[54]

---

51. 729 A.2d 832 (Del.1999).

52. In *Ison,* foreign nationals brought a products liability action against DuPont. All of the alleged injuries occurred outside of the United States. This Court reversed the Superior Court's *forum non conveniens* dismissal, noting that DuPont is incorporated in Delaware, DuPont's principal place of business is Delaware, and there were significant contacts in Delaware because the product at issue had been researched and developed here.

The trial court attempted to distinguish *Ison* by stating that this case has no Delaware connections. But Martinez alleged that DuPont either shipped the asbestos from Delaware or that DuPont purchased the asbestos that allegedly caused the injury. Martinez also alleges that DuPont sent employees to work at the plant in Argentina. Moreover, even the trial court admitted that it "[was] hard-pressed to distinguish the circumstances here from those in cases like *Candlewood, In Re Asbestos (Abou–Antoun),* or others that have declined to find 'overwhelming hardship.'" *Martinez v. E.I. DuPont de Nemours & Co.,* 2012 WL 6840578, at *30 (Del.Super.Ct. Dec. 5, 2012).

53. *Martinez,* 2012 WL 6840578, at *31 (emphasis added).

54. The trial court also dismissed Martinez's Complaint pursuant to Superior Court Rule 19 for failing to join DASRL as a necessary party. In its reasoning for that dismissal, the trial court noted that "[i]f the claims asserted by Plaintiff have any merit, it is DASRL's misconduct that is really at issue in this case, as it is the real party in interest, and the immediate wrongdoer in this litigation." *Martinez,* 2012 WL 6840578, at *20. Because the majority affirms only on the basis of *"fo-*

The majority glosses over this problem by saying that it is not premising its decision on the trial court's "wrong defendant" conclusion. Instead, it says that the trial court focused on "a difficult and open issue of Argentine law"[55] as the basis for its *forum non conveniens* analysis. That dissembling statement allows the majority to address its real concern—the Delaware corporate franchise.

The majority rewrites decades of precedent, saying that it must resolve "tension" in the existing law. But there was no tension in this Court until now. To shore up a result that would have been reversed under settled law, the majority says that "under our precedent" it was appropriate for the trial court to conclude that novel and important legal issues "were more appropriately determined by the courts of the only sovereign whose law is at stake—Argentina—just as ... novel or important issues of Delaware law are best determined by Delaware courts."[56] It cites to cases having nothing to do with *forum non conveniens* while ignoring the long line of authority expressly rejecting this contention.

This Court has repeatedly held that "the trial court is not permitted to compare Delaware, the plaintiff's chosen forum, with an alternate forum and decide which is the more appropriate location for the dispute to proceed."[57] In *Taylor v. LSI*

*Logic Corp.*,[58] for example, this Court specifically rejected "novel legal issues of foreign law" as a reason to dismiss under *forum non conveniens:*

> [T]he trial court in this case did not apply the proper legal standards in dismissing this action on the ground that a Canadian court would be a "more appropriate forum."

\*   \*   \*

The Court of Chancery concluded its analysis with a determination that Canada's courts have a greater interest in the outcome of this case than the Delaware courts, and that the courts of Canada should resolve the application of Canadian laws to a Canadian corporation and its investors. This may be true. Yet Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware. We conclude, therefore, that these factors alone are not sufficient to warrant interference with the plaintiff's choice of forum.[59]

The *Taylor* decision is only one of more than a dozen cases holding that the applicability of foreign law, and all the inconvenience and expense associated with foreign experts, translators, etc., are not important factors that warrant dismissal on the ground of *forum non conveniens.*[60] Several of those decisions ex-

rum non conveniens," I do not address the Rule 19 issue.

55. Opinion at 1108.

56. Opinion at 1106–07.

57. *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, 777 A.2d 774, 779 (Del.2001).

58. 689 A.2d 1196 (Del.1997).

59. *Id.* at 1197, 1200.

60. *Candlewood Timber Grp., LLC v. Pan American Energy, LLC*, 859 A.2d 989, 1002–03 (Del.2004) ("[The defendant] has failed to articulate any hardship that would result from a Delaware Court applying Argentine law. The expense and inconvenience of translating pertinent legal precedent, of retaining foreign lawyers, and of producing foreign law experts to testify at trial, has not been shown to be a material weight in an overwhelming hardship analysis in this particular case."); *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 271 (Del.2001) ("[The defendant's] argument focuses on the expense and inconven-

pressly reject the contention that unsettled questions of foreign law warrant dismissal. In *Berger v. Intelident Solutions, Inc.*,[61] for example, this Court noted that "Delaware courts often decide legal issues—even unsettled ones—under the law of other jurisdictions. Accordingly, this Court has held that '[t]he application of foreign law is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens*.'"[62] This Court applied the same analysis more than forty years ago in *Kolber v. Holyoke Shares, Inc.*,[63] noting that the need to resolve unsettled issues of New York law "is not sufficient reason ... for dismissal under the doctrine of *forum non conveniens*, either alone or in combination with the other factors mentioned. It is not unusual ... for Delaware courts to deal with open questions of the law of sister states or of foreign countries."[64]

Just as there is no "tension" to justify overruling settled law, there is no independent support for the majority's statement that this case involves difficult and novel issues of Argentine law. The majority adopts the trial court's conclusion that the "direct participant doctrine" is the basis for Martinez's claim against DuPont. It then extensively quotes the trial court's description of the Argentine experts' discussion of that doctrine, and whether it is recognized under Argentine law.[65] Without reading the trial court's decision, one would not realize that Martinez is not making a "direct participant" claim. He alleges that he was injured because DuPont, itself, negligently provided a hazardous product and negligently failed to instruct DASRL on the safety measures required to work with asbestos. Even DuPont's expert agreed that Argentine law recognizes such negligence claims.

The majority never discusses or decides whether the trial court correctly analyzed Martinez's claims, because if it did, the majority might not be able to get to its real point—that Delaware corporate law should be decided in Delaware and that other jurisdictions should "stay in their lane." By making novel or important issues of foreign law a significant factor in favor of dismissing a Delaware action, the

ience of translating pertinent legal precedent (assuming German law applies), retaining foreign law experts to testify at trial. On the record before us, we do not think the trial court erred in giving little weight to this argument in the context of the overwhelming hardship analysis"); *Petroplast Petrofisa Plasticos S.A. v. Ameron Intern. Corp.*, 2009 WL 3465984 (Del.Ch. Oct. 28, 2009); *Phillips Petroleum Co. v. Arco Alaska, Inc.*, 1985 WL 11560 (Del.Ch. May 15, 1985); *In re Asbestos Litigation*, 2012 WL 1980414 (Del.Super. May 16, 2012); *Naples v. Diocese of Trenton*, 2010 WL 1731820 (Del.Super. April 29, 2010); *American Guar. & Liability Ins. Co. v. Intel Corp.*, 2009 WL 2589597 (Del.Super. July 24, 2009); *QVT Fund LP v. Eurohypo Capital Funding LLC I*, 2011 WL 2672092 (Del.Ch. July 8, 2011); *Lluerma v. Owens Illinois, Inc.*, 2009 WL 1638629 (Del.Super. June 11, 2009); *Pena v. Cooper Tire & Rubber Co.*, 2009 WL 847414 (Del.Super. March 31, 2009); *Sun-Times Media Grp., Inc. v. Royal & SunAlliance*

*Ins. Co. of Canada*, 2007 WL 1811266 (Del.Super. June 20, 2007).

61. 906 A.2d 134 (Del.2006).

62. *Id.* at 137.

63. 213 A.2d 444 (Del.1965).

64. *Id.* at 446.

65. The majority's lengthy quotes include expressions of the trial judge's disdain for plaintiffs who try to take advantage of our lax *forum non conveniens* standards, thereby burdening the trial judge. It must be noted that the trial judge considers counsel for Martinez to be untrustworthy; that the trial judge imposed sanctions on counsel in another asbestos case; and that the trial judge considered herself burdened by asbestos cases. Delaware's trial judges do not all share that view.

majority is demonstrating its willingness to stay in its own lane. Unfortunately, this new approach means that a plaintiff's choice of forum is considerably less secure.

The majority opinion is a cause for concern. Not surprisingly, the DuPont company has never before argued *forum non conveniens* successfully. It is a Delaware corporation whose headquarters is in Wilmington, Delaware. But the majority holds that it would be an overwhelming hardship for DuPont to defend a toxic tort claim if litigated five blocks from its headquarters. The majority says that it is resolving "tension" in the law, when there was neither tension nor any other accept-able reason to change the law. It then reverses decades of this Court's consistent law without even a nod to the doctrine of *stare decisis*. The majority strains to recast the trial court's decision, and the law, in order to make the point that other jurisdictions should not interfere with the Delaware corporate franchise. That message should not drive a decision on *forum non conveniens*.

