**SUPERIOR COURT OF THE**
**STATE OF DELAWARE**

SHELDON K. RENNIE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801

Michael A. Barlow, Esquire
Gates H. Young, Esquire
QUINN EMANUEL URQUHART &
SULLIVAN LLP
500 Delaware Ave., Suite 1400
Wilmington, DE 19081

John L. Reed, Esquire
Kelly L. Freund, Esquire
DLA PIPER LLP (US)
1201 North Market St., Suite 2100
Wilmington, DE 19081

Date Submitted: May 6, 2026
Date Decided: June 22, 2026

RE:    *Gemspring JTI Parent, LLC et al. v. JMC Investment LLC et al.*, C.A. No.
       N25C-10-165 SKR CCLD

Dear Counsel:

On April 24, 2026, this Court issued its Memorandum Opinion and Order (the "Opinion") granting in part and denying in part Defendants' Motion to Dismiss.[1] The Court deferred ruling on the State Securities Claims, and the parties supplied supplemental briefing.[2]

Rather than re-recite the background,[3] the Court resumes its ruling *in medias res* at the bottom of page 27 of the Opinion.

---

[1] *See* Docket Item ("D.I.") 15 ["Op."]. Capitalized terms have the meaning assigned in the Opinion.

[2] *See* Gemspring Supplement (D.I. 18) ["Gemspring Supp."]; Defendants Supplement (D.I. 19) ["Def. Supp."].

[3] Op. pp. 2–11.

## C. The State Securities Law Claims

Gemspring alleges that Defendants violated California and Connecticut's securities fraud statutes.[4] Defendants move to dismiss these claims on three grounds: (i) the State Securities Claims do not fall within the Section 8.9 carveouts; (ii) the Agreement's Delaware choice-of-law provision bars the claims; and (iii) the claims are inadequately pled.[5]

### 1. The Section 8.9 Carveouts

Neither of the Section 8.9 carveouts covers the State Securities Claims. Indeed, Gemspring does not attempt to argue that the Fraud Carveout applies.[6] Nor could it—it contracted for a definition of "Fraud" that expressly excludes "statutory fraud."[7]

Second, Gemspring's reliance on the Equitable Relief Carveout is misplaced. Gemspring contends that the carveout applies because Gemspring seeks rescissory damages.[8] However, the Delaware Supreme Court recently clarified that "[r]escissory damages are not equitable in nature because they do not return the

---

[4] Specifically: Count II (California Securities Fraud against Seller Defendants); Count III (California Securities Fraud Controller Liability against all Defendants); Count IV (Connecticut Securities Fraud against Seller Defendants); and Count V (Connecticut Securities Controller Liability against all Defendants).

[5] Mot. p. 32.

[6] *See* Ans. Br. p. 50.

[7] *See* Agreement pp. 84–85 (definition of "Fraud").

[8] Ans. Br. pp. 50–51.

aggrieved party to her original position. Rather, rescissory damages are a form of legal relief that monetarily approximates the remedy of rescission."[9]

Moreover, the Court of Chancery already foreclosed Gemspring's access to equitable relief.[10] In its pleading in that court, Gemspring sought both rescission and rescissory damages, although it acknowledged that rescission would be "impracticable" because of "the passage of time" and "Gemspring's subsequent attempts to mitigate its damages" by improving the company.[11] These statements constituted a "rejection" of rescission as a remedy.[12] Because a party seeking rescissory damages without rescission "has an adequate remedy at law," Gemspring had "no need" for the Court of Chancery.[13] Following dismissal, Gemspring elected to transfer the action to this Court—a court of law.[14] Accordingly, Gemspring lacks the equitable hook it needs to bypass Section 8.9.

---

[9] *In re Tesla, Inc. Deriv. Litig.*, 351 A.3d 1005 (Table), 2025 WL 3689114, at *13 (Del. Dec. 19, 2025).

[10] *See* Chancery Decision (i.e., *Gemspring Parent, LLC v. JMC Inv. LLC*, C.A. No. 2024-1332-MTZ (Sep. 24, 2025) (ORDER) (Transaction ID 77163768)).

[11] Am. Compl. ¶¶ 18, 128–32.

[12] *See* Chancery Decision.

[13] *See id.*

[14] *See Gemspring Parent, LLC v. JMC Inv. LLC*, 2025 WL 2888336, *1 (Del. Ch. Oct. 9, 2025) (granting Gemspring's motion to transfer proceedings to the Superior Court). At oral argument, Gemspring represented that it was considering pursuing cross-designation. It has failed to do so.

## 2. *Choice of Law*

Gemspring argues that even if Section 8.9 bars the State Securities Claims, both states' statutes contain anti-waiver provisions that prevent parties from contractually waiving their statutory securities fraud protections.[15] Defendants counter that Section 8.9 remains enforceable because the parties explicitly agreed that Delaware law—not California or Connecticut law—would govern the contract.[16]

In its September 2025 ruling in *RGIS International Transition Holdco, LLC v. Retail Services Wis Corporation*, this Court deployed a two-step inquiry to determine whether a foreign statutory securities fraud claim can overcome a Delaware choice-of-law provision.[17] The Court employs that analysis here. At step one, the Court determines whether to analyze the purported conflict under the "*Anschutz*" or "*Wind Point*" framework.[18] Generally, the *Wind Point* framework applies when the foreign state's statute contains an anti-waiver provision designed to prevent litigants from using another jurisdiction's laws (such as Delaware's) to

---

[15] Ans. Br. p. 51.

[16] Reply Br. pp. 22–23.

[17] 2025 WL 3560688, at *7 (Del. Super. Sep. 29, 2025).

[18] *Id. See Wind Point P'rs VII-A, L.P. v. Insight Equity A.P. X Co.*, 2020 WL 5054791, at *19 (Del. Super. Aug. 17, 2020); *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *8 (Del. Ch. June 11, 2020). Both cases are successors to the foundational choice-of-law ruling, *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006). Notably, however, Delaware courts have previously held that *Abry* itself does not extend to securities claims, so its direct applicability is limited. *Wind Point*, 2020 WL 5054791, at *20.

4

evade liability for securities fraud.[19] The *Anschutz* framework applies when the foreign state lacks such a provision.[20]

*Wind Point* is the appropriate framework for both the California and Connecticut claims. Regarding California, the Court of Chancery has already concluded that the state possesses the necessary statutory language and public policy interest to proceed under *Wind Point*.[21] Although Delaware courts have not yet made a similar determination for Connecticut, this Court is satisfied that Connecticut: (i) has a sufficient anti-waiver provision; (ii) maintains a "fundamental policy" requiring that a foreign state must provide a "similar" remedy for securities violations; and (iii) Delaware law may not offer a comparable remedy.[22]

At step two, the Court applies the selected framework. Under *Wind Point*, the State Securities Claims survive a Delaware choice-of-law provision only if

---

[19] *Id.* at *8.

[20] *Id.* at *7 n.96 (noting that *Anschutz* did not address (i) Texas's anti-waiver provision, or (ii) the doctrine permitting departure from a choice-of-law clause to prevent contracting around a default state's public policy).

[21] *See Swipe Acq. Corp. v. Krauss*, 2021 WL 282642, at *5 (Del. Ch. Jan. 28, 2021) (applying *Wind Point* framework to California securities law).

[22] Neither Delaware nor Connecticut courts have addressed whether the two states share comparable securities fraud rights and remedies. However, Connecticut courts have rejected the choice-of-law provisions of other jurisdictions when the chosen law fails to provide a similar remedy. *See Pursuit P'rs, LLC v. UBS AG*, 2009 WL 3286011, at *3–4 (Conn. Super. Ct. Sep. 8, 2009) (rejecting a New York choice-of-law-provision because New York law did not permit recovery under the Connecticut Uniform Securities Act or provide a similar remedy). Because this is a pleadings-stage dispute, the parties did not brief this issue, and the Court dismisses the Connecticut State Securities Claims on other grounds, the Court will follow the litigants' lead and refrain from conducting a substantive comparison of Delaware and Connecticut securities law.

Gemspring demonstrates that: (1) the foreign state would be the "default state" absent the choice-of-law provision; (2) enforcing the provision would violate a "fundamental" public policy of that state; and (3) that state has a materially greater interest in the dispute than Delaware.[23]

To determine the "default state," courts evaluate five factors from the Restatement (Second) of Conflict of Laws:

> (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[24]

In weighing these factors, the Court notes that a particularly significant consideration in contract disputes is upholding the justified expectations of the parties.[25]

Gemspring argues that either California or, alternatively, Connecticut would be the default state but for the Delaware choice-of-law provision.[26] The Court agrees that the facts alleged point to California as the default state. The Company is

---

[23] *RGIS*, 2025 WL 3560688, at *8 (citing *Wind Point P'rs*, 2020 WL 5054791, at *19); *see also* Restatement (Second) Conflict of Laws § 187(2)(b) (Am. Law Inst. 1971).

[24] *Id.* (quoting Restatement (Second) Conflict of Laws § 188 (Am. Law Inst. 1971)).

[25] *Moran v. Zoomcar India Private Ltd.*, 2025 WL 3243428, at *13 (Del. Super. Nov. 20, 2025) (citing *Focus Fin. P'rs v. Holsopple*, 241 A.3d 784, 805 (Del. Ch. 2020)) (applying the Restatement analysis in the employment law—not securities—context).

[26] Gemspring Supp. pp. 1–2.

headquartered in California,[27] and its largest customer's facilities are located there.[28] Gemspring personnel made multiple trips from Connecticut to California to negotiate terms and conduct diligence.[29]

Further, several individual Defendants resided in California at the time,[30] and Defendant Tackitt, along with representatives of Seller Defendants, joined Gemspring in California for negotiations.[31]

The involvement of other jurisdictions does not unseat the Golden State.[32] Although Gemspring is a Delaware entity headquartered in Connecticut[33] (where its employees conducted two virtual diligence sessions),[34] and JMC is a Delaware entity headquartered in New York[35] (where individual Defendants Sadusky and Painvin resided),[36] the Restatement factors heavily favor California. California was the alleged place of contracting; the site of all substantive, in-person negotiations; the

---

[27] Am. Compl. ¶ 20.

[28] *Id.* at ¶ 65

[29] *Id.*

[30] *Id.* at ¶ 71.

[31] *Id.* at ¶ 65.

[32] *See, e.g., Zoomcar*, 2025 WL 3243428, at *13 (comparing the prospective default state to other jurisdictions connected to the matter).

[33] Am. Compl. at ¶ 174.

[34] *Id.* at ¶ 66.

[35] *Id.* at ¶ 21.

[36] *Id.*

location of the contract's subject matter; the place of performance; and the domicile of multiple key individuals.

The same cannot be said for Connecticut. Given California's dominant role, it is unreasonable to conclude that the parties expected Connecticut to be the default state;[37] indeed, the Gemspring team traveled *to* California to negotiate the deal.[38] Nor can Connecticut serve as an "alternative" default state if the California statutory claims ultimately fail. California remains the proper default state regardless of whether Gemspring pursues its claims there.[39] Accordingly, the Delaware choice-of-law provision prevails over the Connecticut claims, and Counts IV and V are dismissed.

The Court proceeds with the California claims, resolving the second and third components of the *Wind Point* inquiry together. In *Swipe Acquisition Corp. v. Krauss*, the Court of Chancery concluded that: (i) barring California Securities Act claims could diminish a plaintiff's "unwaivable statutory rights" under California

---

[37] *See Zoomcar*, 2025 WL 3243428, at *13 (rejecting New York because the employment relationship between the parties clearly favored the Republic of India); *see also Focus Fin. P'rs*, 241 A.3d at 814 (Del. Ch. 2020) ("[T]he balancing of the *Restatement* factors is clear. Based on the allegations in the complaint . . . [i]t it is not reasonably conceivable that a state other than California could be the default state. It certainly is not reasonably conceivable that Delaware could be the default state.").

[38] *See Abry P'rs*, 891 A.2d at 1049 (noting that a sophisticated buyer's physical location was "far removed from that which ordinarily makes geography a factor").

[39] Delaware also appears to have a stronger claim than Connecticut. In any event, a complaint can successfully allege two default states if the states' contacts are so evenly matched that a reasonable fact finder could conclude that either state could ultimately prevail.

law, and (ii) California has a materially greater interest in the application of its own Securities Act than Delaware.[40] The Court adopts these conclusions.[41]

Accordingly, the California State Securities Claims survive the choice-of-law challenges, while the Connecticut State Securities Claims do not.

### 3. Merits

Finally, Defendants argue that the California State Securities Claims must be dismissed for failure to state a claim under California law.[42] Specifically, Defendants contend that the Amended Complaint fails to allege a sufficient "geographic nexus" between California and "the offer or acceptance of the sale of the security."[43] They assert that the operative pleading contains no allegation that any seller of the Company's securities made an offer to sell, or accepted an offer to buy, within California.[44] However, the allegations in the Amended Complaint directly contradict

---

[40] 2021 WL 282642, at *7–8.

[41] Defendants argue that *Swipe* is distinguishable because the Agreement's Delaware choice-of-law provision *expressly* disclaims the law of other jurisdictions. *See* Mot. p. 34 n.6. However, even if a broader contract could bolster Delaware's interest, the California State Securities Claims survive. *See Wind Point*, 2020 WL 5054791, at *18 (holding that state securities claims were "not barred" "regardless of the breadth" of the governing agreement's Delaware choice-of-law provision).

[42] Mot. p. 35.

[43] *Id.* at p. 36 (quoting *SVF II Aggregator (DE) LLC v. Shafi*, 2024 WL 3324623, at *2 (N.D. Cal. May 2, 2024)). This opinion requires clarification. There, the United States District Court for the Northern District of California initially dismissed the blue sky claims as insufficiently pled. However, the following year, the court permitted an amended version of the complaint to proceed. *See SVF II Aggregator (DE) LLC v. Shafi*, 2025 WL 2490447 (N.D. Cal. Feb. 27, 2025) (referencing the amended allegations at ¶ 238).

[44] Reply Br. p. 25.

this contention. The pleading explicitly alleges that "Seller Defendants offered for sale, and did sell, a majority security interest in the Company from the state of California."[45] Taken as a whole and accepting the allegations as true, the Amended Complaint sufficiently states a claim under the California Securities Act.[46]

### 4. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as to Counts IV and V (Connecticut State Securities Claims) and **DENIED** as to Counts II and III (California State Securities Claims).

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[45] Am. Compl. ¶ 147 (repeated at ¶ 156).

[46] For the avoidance of doubt, the Court notes that while Gemspring's claims are substantively governed by California law, the rules of pleading are a procedural matter controlled by Delaware law. *See Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 82 A.3d 1, 14 n.36 (Del. Super. 2012), *aff'd*, 86 A.3d 1102 (Del. 2014) ("Since the governing rules of pleadings are procedural, not substantive, Delaware Superior Court Civil Rules apply."). Accordingly, the Court evaluates whether the substantive elements of California statutory claims are sufficiently set forth under Superior Court Civil Rule 8's notice pleading standard. *See id.* (discussing notice pleading standard). The Court concludes that the Amended Complaint easily satisfies this threshold.