COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

December 29, 2015

Steven L. Caponi, Esquire
Elizabeth A. Sloan, Esquire
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801

Vincent J. Poppiti, Esquire
Carl D. Neff, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 300
Wilmington, DE  19801

> Re:  *VTB Bank v. Navitron Projects Corp.*
> C.A. No. 8514-VCN
> Date Submitted:  August 11, 2015

Dear Counsel:

Plaintiff VTB Bank ("VTB"), a Ukrainian bank and company,[1] brings this action against Development Max, LLC ("Development Max"), a Delaware limited liability company, and Navitron Projects Corp. ("Navitron"), a Panamanian corporation and managing member of Development Max, for fraudulent transfer, constructive fraudulent transfer, and unjust enrichment and requests that the Court

---

[1] While VTB is based in Ukraine, its majority shareholder is a Russian Open Joint-Stock Company.  Verified Compl. ("Compl." or "Complaint") ¶ 6.

appoint receiver for Development Max, impose a constructive trust, avoid the allegedly fraudulent transfers, and award VTB its court costs.

## I.   BACKGROUND

A. *The Parties*

Development Max was formed in 1999 and is co-owned by Dmitriy Sviatash and Vasiliy Poliakov.[2]   Sviatash and Poliakov were also managing members of Development Max until 2008, when Navitron, also controlled by Sviatash and Poliakov, became the managing member.[3]   In 2006, Development Max and Navitron co-owned AutoInvestStroy LLC, the "umbrella entity for the AIS Group."[4]   The AIS Group, by 2007, was "one of the largest car retail and car servicing businesses in Ukraine, holding a 10% share of the automobile market."[5] It purchased cars from manufacturers and sold them through a network of "Retail[] Sales Centers" including thirty seven centers and fifty five show rooms, the "vast

---

[2] *Id.* ¶ 11.
[3] *Id.* ¶¶ 2, 11.
[4] *Id.* ¶ 12.
[5] *Id.* ¶ 13.

majority" of which were formed and owned by Development Max.[6] The AIS

Group also owned automobile service centers, parts stores, and assembly plants to

supplement its retail sales business.[7]

B. *VTB Lends to Two AIS Group Subsidiaries*

In 2007, Poliakov, on behalf of the AIS Group, approached VTB seeking

financing for Private Enterprise RS-Centre ("PERS") and Inter-Auto LLC ("IA,"

and together with PERS, the "Borrowers"), each an AIS Group subsidiary.[8] On

May 26, 2008, VTB and PERS entered into a $30 million Credit Line Agreement

to be fully repaid on or before May 25, 2009 (the "PERS Loan").[9] On June 10,

2008, VTB and IA entered into a similar Credit Line Agreement for $40 million to

be fully repaid on or before June 9, 2009 (the "IA Loan," and together with the

PERS Loan, the "Car Loans").[10] As security for the Car Loans, the AIS Group

"enter[ed] in a suretyship agreement and pledge[d] both personal and real property

---

[6] *Id.*
[7] *Id.*
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 15.
[10] *Id.* ¶ 16.

as collateral" (the "Collateral").[11]  By January 2009, PERS had drawn down $23.1 million and IA had drawn down $39.9 million.[12]  "On April 9, 2009, the PERS Loan and IA Loan were amended, limiting the credit line to US$23.1 million and US$39.9 million respectively."[13]

C. *The Alleged Fraudulent Conduct*

The Borrowers used the Car Loans to purchase cars from manufacturers.[14] VTB alleges that Navitron and Development Max, through their control of the AIS Group, fraudulently transferred the purchased vehicles through the AIS Group's "network of shell companies" to the Retail Sales Centers, and funneled the sale proceeds back to themselves.[15]  In February and March 2009, in an attempt to appease VTB's concerns regarding repayment of the Car Loans, Sviatash met with VTB, requested a restructuring of the debt and meetings with VTB officers, and "promis[ed] to prepare a repayment plan for the loans."[16]  The requested officer

---

[11] *Id.* ¶¶ 15-16.
[12] *Id.* ¶ 19.
[13] *Id.* ¶ 17.
[14] *Id.* ¶ 20.
[15] *Id.*
[16] *Id.* ¶ 21.

meetings, however, never took place, a plan was never produced, and the Borrowers, shortly thereafter, failed to make payments on the Car Loans.[17]  During the summer of 2009, VTB initiated court proceedings in Ukraine to foreclose on the Collateral, though the AIS Group delayed, and many times failed to appear for, such proceedings.[18]

VTB alleges that during the pendency of the Ukrainian proceedings, Development Max and Navitron, through their control of the AIS Group, fraudulently transferred the Collateral through a "web of affiliate companies . . . formed solely to facilitate the fraud" (the "Transfers").[19]  VTB argues that the Transfers could not have occurred absent reliance on "forged and fictitious documents," reasoning that Ukrainian law requires, prior to transferring property subject to a lien, either notary certification that the assets are free from any liens or consent of the lien holder (which VTB did not provide).[20]  The Transfers were effectuated, VTB continues, to "hide the Collateral from VTB," and "each

---

[17] *Id.* ¶¶ 21-22.
[18] *Id.* ¶ 23.
[19] *Id.* ¶¶ 2, 24.
[20] *Id.* ¶¶ 24-25.

recipient of the Transfers was owned/controlled by Development Max and/or Navitron."[21]  The Transfers resulted in the AIS Group's "assets, money, property and Collateral . . . – including VTB's loan proceeds – resid[ing] with Development Max and Navitron" which, given the Borrowers' insolvency, precluded VTB from foreclosing on the Collateral.[22]  VTB alleges that Development Max and Navitron plan to continue this fraudulent scheme in the future, as evidenced by their renaming of the "mortgagors, 'Corporation AIS', to United KOMP Corporation."[23]

## II.    PROCEDURAL POSTURE

VTB filed the Complaint on April 30, 2013.  In response, Development Max and Navitron filed a Motion to Dismiss on July 31, 2013 seeking dismissal on grounds of *forum non conveniens*, among other theories.[24]  The Court, in a memorandum opinion issued on April 28, 2014 ("*VTB I*"), granted the Motion with respect to VTB's claim against Navitron, but denied the Motion with respect to

---

[21] *Id.* ¶ 26.
[22] *Id.* ¶ 27.
[23] *Id.* ¶ 28.
[24] Opening Br. of Defs. Navitron Projects Corp. and Development Max, LLC in Supp. of Their Mot. to Dismiss 16.

VTB's claim against Development Max.[25]  In denying Development Max's Motion to Dismiss, the Court noted that "VTB's request for a receiver implicates this Court's fundamental role in overseeing the conduct of Delaware entities," and recognized that "even where, as in this action, the defendant may otherwise suffer overwhelming hardship if required to litigate in Delaware," Delaware's strong policy favoring this Court's ability to "oversee and rectify the conduct of Delaware entities may be so compelling in a particular case that it may militate against dismissal on *forum non conveniens* grounds."[26]

Recognizing that the Motion to Dismiss briefing improperly implied that VTB's claims arose under Delaware law (as opposed to Ukrainian law), the Court deferred ruling on the remaining grounds to allow the parties an opportunity to present expert testimony regarding the application of Ukrainian law to the facts of the case.[27]  Following the Court's guidance, the parties each submitted opening and

---

[25] *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *12 (Del. Ch. Apr. 28, 2014).
[26] *Id.* at *5, *11.
[27] *Id.* at *12.

rebuttal expert affidavits[28] and supplemental briefing on Development Max's

Motion to Dismiss.[29]  Having received the parties' expert reports and supplemental

briefing, the Court now reconsiders Development Max's arguments seeking

dismissal on grounds of *forum non conveniens*.

---

[28] Development Max submitted the Second Affidavit of Gleb Bialyi (Trans. ID 56026500) ("Bialyi Opening Aff.") and the Third Affidavit of Gleb Bialyi (Trans. ID 56219275) ("Bialyi Rebuttal Aff.").  VTB submitted the Expert Report of Roman Maidanyk (Trans. ID 56024154) ("Maidanyk Opening Aff.") and the Second Expert Report of Dr. Roman Maydanyk (Trans. ID 56217259) ("Maidanyk Rebuttal Aff.").

[29] On November 12, 2014 Development Max filed its Supplemental Opening Brief in Support of its Motion to Dismiss.  VTB responded on December 15, 2014 with an opposition brief.  Development Max's January 5, 2015 reply concluded the briefing on the Motion to Dismiss.  Development Max argued for dismissal on *forum non conveniens* grounds in its supplemental briefing.  Development Max, LLC's Supplemental Opening Br. in Supp. of its Mot. to Dismiss 18-21.  VTB, however, in apparent (and reasonable) reliance on the Court's representation that it may revisit its *VTB I forum non conveniens* analysis "upon resolution of Development Max's motion to dismiss under Rule 12(b)(6)," *VTB Bank*, 2014 WL 1691250, at *12 n.108, considered Development Max's argument, at least at that time, "dead," and avoided analysis of the argument's merits.  Pl.'s Opposition to Def.'s Supplemental Opening Br. in Supp. of its Mot. to Dismiss 2.  The Court, on May 22, 2015, seeking further guidance on the topic, wrote to the parties requesting additional briefing on the *forum non conveniens* analysis, to which VTB and Development Max responded by filing additional supplemental briefs on June 4 and July 24, 2015, respectively.

### III.   CONTENTIONS

VTB argues that Development Max has not met its burden to overcome Delaware's "presumption" favoring a plaintiff's choice of forum, especially given Delaware's strong interest in preventing fraudulent use of its entities,[30] that application in Delaware courts of foreign law does not of itself warrant dismissal,[31] and that continuing the case in Ukrainian courts will create discovery and personal jurisdiction burdens not present in Delaware.[32] Development Max disputes each of VTB's contentions, and further argues that requiring it to litigate in Delaware would subject it to "overwhelming hardship," justifying dismissal on *forum non conveniens* grounds.[33]

---

[30] Pl.'s Supplemental Briefing on the Issue of Forum Non Conveniens ("Pl.'s Supplemental Br.") 5-7.

[31] *Id.* at 8-9.

[32] *Id.* at 10-13.

[33] Def. Development Max, LLC's Supplemental Briefing on the Issue of *Forum Non Conveniens* 5-17.

## IV.  ANALYSIS

A. *Forum Non Conveniens Standard*

Delaware courts generally respect a plaintiff's choice of forum "unless equity weighs strongly in favor of the defendant."[34]  Dismissal on grounds of *forum non conveniens* is a "drastic remedy," and should be analyzed with caution as not to deprive a plaintiff of the procedural or substantive advantages the chosen forum may afford.[35]  To overcome this burden, a defendant must show that "the traditional *forum non conveniens* factors weigh so heavily that the defendant will face 'overwhelming hardship' if the lawsuit proceeds in Delaware."[36]  Though the

---

[34] *Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1106 (Del. 2014); *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 841 (Del. 1999).

[35] *Ison*, 729 A.2d at 841 (quoting *Picketts v. Int'l Playtex, Inc.*, 576 A.2d 518, 524 (Conn. 1990)).

[36] *Martinez*, 86 A.3d at 1104; *accord Ison*, 729 A.2d at 838; *Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444, 447 (Del. 1965) ("The dismissal of an action on the basis of the doctrine, and the ultimate defeat of the plaintiff's choice of forum, may occur only in the rare case in which the combination and weight of the factors to be considered balance overwhelmingly in favor of the defendant."); *Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *10 (Del. Ch. Dec. 17, 2015) ("My job in evaluating this motion is not to choose the 'best,' or even a 'proper' forum; instead, it is to respect the Plaintiff's choice of forum unless the Defendant can show resulting hardship or inconvenience so profound that it overwhelms that choice.").

"overwhelming hardship" standard is an "appropriately high burden," it is "not intended to be preclusive."[37] While Delaware courts generally defer to a plaintiff's choice of forum, "foreign plaintiffs . . . are routinely accorded far less deference in their choice of forum than are citizens or residents."[38] Indeed, in dismissing a case on *forum non conveniens* grounds, the United States Supreme Court reasoned that "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."[39]

B. *Application*

Delaware courts assess the *forum non conveniens* inquiry pursuant to the six *Cryo–Maid*[40] factors:

---

[37] *Martinez*, 86 A.3d at 1105 ("The evolution of the adjective 'overwhelming' in this context is consistent with the distinction between preclusive and stringent."); *accord Pipal*, 2015 WL 9257869, at *5 ("The moving defendant need not show that it is factually or financially impossible to mount a defense in this jurisdiction. Rather, to overcome a plaintiff's jurisdictional choice, a moving defendant must demonstrate that such a choice is overwhelmingly inappropriate and inconsistent with the administration of justice.").

[38] *Lisa, S.A. v. Mayorga*, 2009 WL 1846308, at *9 n.41 (Del. Ch. June 22, 2009) (alteration in original) (quoting *In re Nash v. McDonald's Corp.*, 1997 WL 528036, at *3 (Del. Super. Feb. 27, 1997)), *aff'd*, 993 A.2d 1042 (Del. 2010).

[39] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

[40] *See Gen. Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681 (Del. 1964).

> (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[41]

This Court, in *VTB I*, denied Development Max's motion to dismiss on *forum non conveniens* grounds. In its analysis, the Court first determined that each of the first five *Cryo–Maid* factors either favored Development Max or was neutral. To briefly summarize: (1) "the vast majority of the evidence necessary for Development Max to defend the fraudulent transfer and unjust enrichment claims would be not in Delaware but rather in Ukraine, and most likely written in Ukrainian"; (2) "all relevant witnesses reside outside Delaware and, in all likelihood, in Ukraine, where the alleged conduct occurred"; (3) while the ability to view the premises slightly favors litigation in Ukraine, the availability of video recording largely neutralizes this factor; (4) Ukraine has the most significant relationship to the fraudulent transfer and unjust enrichment claims, necessitating

---

[41] *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198-99 (Del. 1997).

application of Ukrainian law; and (5) because no similar action is pending in another jurisdiction, this factor is neutral.[42] In denying Development Max's motion, however, the Court afforded due consideration to the Delaware Supreme Court's statement that the "Other Practical Considerations" factor is "neither hollow in meaning nor rigid in application."[43] The *VTB I* Court reasoned that Development Max's request for appointment of a receiver implicated "this Court's fundamental and immutable responsibility to supervise the entities chartered and formed under Delaware law," and that

> Delaware's public interest in having this Court oversee and rectify the conduct of Delaware entities may be so compelling in a particular case that it may militate against dismissal on *forum non conveniens* grounds even where, as in this action, the defendant may otherwise suffer overwhelming hardship if required to litigate in Delaware.[44]

The Court therefore determined that, pursuant to the sixth *Cryo–Maid* factor—practical problems affecting the trial's ease, speed, and expense—"[i]t cannot be said to cause overwhelming hardship under these circumstances to require Development Max, an entity formed under the laws of the State of

---

[42] *VTB Bank*, 2014 WL 1691250, at *8-10.
[43] *Martinez*, 86 A.3d at 1112.
[44] *VTB Bank*, 2014 WL 1691250, at *11.

Delaware and alleged to have engaged in pervasive fraudulent conduct, to defend its actions before this Court."[45] The "circumstances" referred to, however, include the Court's determination that Development Max may have properly stated a claim under Ukrainian law for fraudulent transfer, necessitating the appointment of a receiver, thereby implicating Delaware's interest and "fundamental role in overseeing the conduct of Delaware entities."[46]

Stated another way, the *VTB I* Court's determination, on which the above reasoning relies, that Delaware's interest in overseeing its entities warrants denial of Development Max's motion to dismiss on *forum non conveniens* grounds, recognizes that the Complaint may adequately state a claim for fraudulent transfer under Ukrainian law that can be said to amount to "gross mismanagement" under Delaware law.[47] The Court, however, never affirmatively so held, and, in fact,

---

[45] *Id.* at *12.

[46] *Id.* at *5, *12.

[47] While VTB's fraudulent transfer and unjust enrichment claims are, under Delaware's choice of law regime, appropriately analyzed under Ukrainian law, *id.* at *9-10, the question of whether to appoint a receiver is, pursuant to the internal affairs doctrine, governed by Delaware law. *Id.* at *5.

expressly acknowledged its assumption:[48] "The parties did not present expert affidavits or testimony on these areas of Ukrainian law, and the Court cannot resolve whether the allegations of the Complaint state a claim or whether they are subject to (or satisfy) the particularity pleading standard without guidance from qualified, Ukrainian law experts."[49] Thus, the question here is whether VTB's allegations state a claim under Ukrainian law adequate to justify the appointment of a receiver under Delaware law.

As stated above, the Court, since issuing *VTB I*, has received from each party opening and rebuttal expert affidavits analyzing the application of Ukrainian law to the facts of this case.[50] Upon review of such affidavits, however, the Court finds itself, as indicated in its May 22, 2015 letter to the parties, experiencing difficulty "[a]pplying the law of Ukraine to the facts in the Complaint."[51] The positions taken by the experts are in many instances diverging and in others

---

[48] *Id.* at *12 ("The allegations of Development Max's systemic and systematic fraudulent conduct . . . *may* state reasonably conceivable claims for fraudulent transfers under Ukrainian law . . . ." (emphasis added)).

[49] *Id.*

[50] *See supra* note 28.

[51] Letter to Steven L. Caponi, Esquire and Austen C. Endersby, Esquire Regarding the Forum Non Conveniens Issue 3 (May 22, 2015).

irreconcilable. For example, Development Max's expert, Gleb Bialyi, refutes the existence of an unjust enrichment cause of action under Ukrainian law, stating that "Ukraine does not recognize judicially-created causes of action [or] . . . claims sounding in equity."[52] To the extent that Ukraine's recently-enacted 2011 Corruptive Practices Act would create criminal liability for "unlawful enrichment," Bialyi continues, any civil challenge "could not be brought separately" from the criminal case, and no other Ukrainian laws support a claim for unjust enrichment.[53] VTB's expert, Roman Maidanyk, however, states that "[a]ccording to Art. 1212 of the Civil Code of Ukraine [("Art. 1212")], *unjustly acquired property* is property (including money) acquired or preserved by [a] person at the expense of another person (injured person) *without sufficient legal basis* . . . [and] must be returned to the injured [person]," and that Art. 1212 "is sufficiently similar to the American concept of unjust enrichment."[54] Further, with respect to VTB's fraudulent

---

[52] Bialyi Opening Aff. 8.
[53] *Id.* at 8-18 (emphasis removed).
[54] Maidanyk Opening Aff. 5, 7. Bialyi disputes Maidanyk's interpretation of Art. 1212, stating that it "addresses *acquired property*, not **unjustly** *acquired property*," and that Art. 1212 does not apply to the facts of this case because VTB's allegations are insufficient to find that that Development Max "(i) acquired

conveyance claim, while the experts agree (though through divergent reasoning) that Article 234 of the Civil Code of Ukraine governing "Sham Transactions" would not provide VTB a successful cause of action, they disagree as to the viability of a potential claim under Article 235 of the Civil Code of Ukraine ("Art. 235"). Art. 235 invalidates transactions in which the parties "formally enter into one contract, but in fact intend to create [a] legal relationship of a different nature."[55] Maidanyk, VTB's expert, suggests that VTB may successfully claim under Art. 235 that the AIS Group's transfer of the Car Loan proceeds through affiliates and eventually to Development Max and Navitron constituted an invalid "simulated" transaction, the true nature of the transfer being a gift rendered unlawful by the conditions imposed by VTB on the Car Loan proceeds.[56] In contrast, Bialyi, Development Max's expert, states that money lent by a bank is no longer the bank's property (though it may have a right to repayment) and that

---

property of VTB without sufficient legal ground, (ii) kept or stored VTB's property; and (iii) is in possession of VTB's property." Bialyi Rebuttal Aff. 1-3. Further, Bialyi, in his Opening Affidavit, suggests that Art. 1212 is more closely akin to the common law concepts of replevin or conversion as opposed to unjust enrichment. Bialyi Opening Aff. 16.

[55] Maidanyk Opening Aff. 9-10.

[56] *Id.* at 12.

therefore the money did not belong to VTB at the time of the Transfers, that this transaction is not actionable under Ukrainian law as it may be under Delaware's fraudulent transfer law, and that Art. 235 would not allow the Court to invalidate both the "superimposed 'deceptive' transaction *and* the underlying transaction left in its wake"—the parties would remain bound to the underlying transaction (here, the "gift").[57] The inconsistencies, unfortunately, continue.[58]

Given the civil law structure of the Ukrainian legal system (reducing the precedential value of Ukrainian court decisions),[59] the absence of a direct counterpart under Ukrainian law to Delaware's fraudulent transfer and unjust enrichment causes of action, and the experts' starkly divergent opinions regarding the applicability of the Civil Code of Ukraine to the facts of this case—indicating

---

[57] Bialyi Rebuttal Aff. 5-7.

[58] For example, Bialyi stated that the Complaint must "set forth a factually detailed statement of circumstances giving rise to the claim," and that VTB's failure to attach certain documents to the Complaint may result in its refusal and return, Bialyi Opening Aff. 32-33, while Maidanyk states that the appropriate pleading standard is more relaxed, requiring only a "description of the circumstances on which the claims are based," and that the Ukrainian courts "rarely refuse to accept [documents required to be attached to the complaint], supplied during the hearing, unless they are irrelevant or unreliable." Maidanyk Rebuttal Aff. 11 (emphasis removed).

[59] Bialyi Opening Aff. 6; Maidanyk Opening Aff. 5.

unsettled foreign law and its uncertain application to the facts—the Court holds

that Ukraine, as opposed to Delaware, is the proper forum in which to litigate this

dispute. The above considerations mandate this conclusion on two grounds.

First, as explained above, the Court's *forum non conveniens* analysis in

*VTB I* concluded that the only factor favoring VTB (and the factor the Court rested

its decision on) was the "other practical problems" factor, given VTB's request for

appointment of a receiver and Delaware's policy favoring oversight by its courts of

Delaware entities.[60] A corollary of the difficult application of complex, unsettled

Ukrainian law to the facts of this case, however, is this Court's inability to appoint

a receiver based on such law.[61] Appointment of a receiver, especially to a solvent

corporation, is an "extraordinary remedy."[62] The Delaware standard for

---

[60] *VTB Bank*, 2014 WL 1691250, at *11-12.

[61] As stated, though the question of whether to appoint a receiver is governed by Delaware law, the question of whether the Delaware standard for appointment of a receiver has been met is based on whether Development Max violated Ukrainian law. *See supra* note 47.

[62] *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *5 (Del. Ch. Oct. 28, 2013); *Pope Invs. LLC v. Benda Pharm., Inc.*, 2010 WL 5233015, at *10 (Del. Ch. Dec. 15, 2010) ("Because a receiver constitutes extraordinary relief, it might make sense to require [the plaintiff] to pursue a less drastic remedy that might allow it to collect

appointment of a receiver requires "a showing of fraud, gross mismanagement, positive misconduct by corporate officers, breach of trust, or extreme circumstances showing imminent danger of great loss which cannot otherwise be prevented."[63]  In light of the extraordinary nature of and strong showing of misconduct necessary to justify this relief, there are significant difficulties with appointing a receiver for Development Max under the circumstances of this case. Consequently, while Delaware's interest in overseeing its entities remains, "[o]ne of the principal [remedies] this Court [utilizes to] uphold[] the integrity of Delaware law"—appointment of a receiver[64]—is no longer controlling.  Indeed, the Court's denial in *VTB I* of Development Max's motion to dismiss on grounds of *forum non conveniens* relied on the Court's potential appointment of a receiver should Development Max's conduct, analyzed under Ukrainian law, so require.[65]

---

on its judgment while allowing [the defendant] to continue operations, before seeking a receiver.").

[63] *Zutrau v. Jansing*, 2013 WL 1092817, at *5 (Del. Ch. Mar. 18, 2013).

[64] *VTB Bank*, 2014 WL 1691250, at *11.

[65] *Id.* at *12 ("There may be situations in which Delaware's interest in hearing a request for the equitable appointment of a receiver for a Delaware entity does not outweigh the hardship that litigating in Delaware would entail. Based on the

Thus, with the uncertainty in applying Ukrainian law, the weight the *VTB I* Court

afforded the "other practical problems" *Cryo–Maid* factor is no longer appropriate.

Considering the five remaining *Cryo–Maid* factors in accordance with the Court's

analysis in *VTB I*,[66] Development Max has satisfied the "overwhelming hardship"

standard and is therefore entitled to dismissal on *forum non conveniens* grounds.[67]

---

allegations against Development Max, however, the Court cannot reach that conclusion here at this time.").

[66] *See supra* text accompanying note 42.

[67] Additionally, the fact that Development Max was likely created for a proper purpose reduces, to some extent, Delaware's interest in its oversight. Development Max was formed in 1999, yet its allegedly fraudulent conduct—improper diversion of the Car Loan proceeds and Collateral—did not begin until 2007. Compl. ¶¶ 11, 14. While VTB alleges that Development Max was formed and used to effectuate the alleged fraud, Pl.'s Supplemental Br. 2, such statements are conclusory and, without more, insufficient to support such an inference. In essence, while Delaware is interested in preventing use of its entities to engage in fraud or other misconduct, such interest is enhanced where the fraud or misconduct extends to the formation or dissolution of the entity, which implicates a governmental agency— the office of the Secretary of State—into the improper scheme. *Pipal*, 2015 WL 9257869, at *10 (denying a defendant's motion to dismiss on *forum non conveniens* grounds where the individual wrongdoers "*created* a Delaware entity to hold, market, and monetize the purloined asset . . . in contravention of Indian law . . . [and] the Delaware Uniform Trade Secrets Act" (emphasis added)); *cf. Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027-28 (Del. 2012) (maintaining jurisdiction over a non-Delaware entity under conspiracy theory of personal jurisdiction because Delaware's long-arm statute extends to anyone who "[t]ransacts any business . . . in the State," quoting 10 *Del. C.* § 3104(c)(1), and

Second, as the Delaware Supreme Court recently held in *Martinez*, an "implicit and logical corollary of the fourth *Cryo–Maid* factor"—whether the case implicates Delaware law more properly decided by Delaware courts—is that "important and novel issues of other sovereigns are best determined by their courts where practicable."[68]  To that end, where "[t]his Court is being asked to decide complex and unsettled issues of [foreign] law,"[69] it will consider "the defendant's interest in obtaining an authoritative ruling from the relevant foreign courts on the legal issue on which its liability hinges, as distinguished from a predictive, non authoritative ruling by our courts."[70]  As stated, application of Ukrainian law, as interpreted by the parties' experts, to the facts of this case is far from straightforward.  The Civil Code of Ukraine contains no direct counterpart to Delaware's unjust enrichment and fraudulent transfer laws, and the parties' expert affidavits submit diverging interpretations regarding its appropriate application to

---

finding that the Delaware co-conspirator's filing of a certificate of cancellation as part of the conspiracy constituted such a transaction of business).

[68] *Martinez*, 86 A.3d at 1109-10.

[69] *Hupan v. All. One Int'l, Inc.*, 2015 WL 7776659, at *8 (Del. Super. Nov. 30, 2015).

[70] *Martinez*, 86 A.3d at 1111.

the facts.[71]   Therefore, Development Max would benefit from an authoritative

ruling from Ukrainian courts.  The *Martinez* court reinforced its reasoning with a

reminder that "plaintiffs who are not residents of Delaware, whose injuries did not

take place in Delaware, and whose claims are not governed by Delaware law have

a less substantial interest in having their claims adjudicated in Delaware."[72]  Here,

VTB is a Ukrainian bank whose injuries occurred in Ukraine and whose claims are

governed by the laws of Ukraine.  It therefore has a "less substantial" interest in

adjudicating its claims in Delaware.[73]

---

[71] The *Pipal* court, in denying a motion to dismiss on *forum non conveniens* grounds, noted that while Indian law governed "at least . . . one of the claims," its application to the issues was "settled" and alternative causes of action required application of Delaware law to the facts of the case.  *Pipal*, 2015 WL 9257869, at *8.  The *Pipal* court concluded, therefore, that while the factor "slightly favors" dismissal, "this factor would be more persuasive if unsettled issues of Indian law were presented."  *Id.* at *9.

[72] *Martinez*, 86 A.3d at 1111.

[73] The Court notes further that though Development Max is a Delaware entity, its operation of the AIS Group takes place solely in Ukraine.  *Id.* at 1108 (though the defendant—E.I. du Pont de Nemours and Company, Inc.—itself obviously had a strong connection to the State of Delaware, the Court, in granting the defendant's motion to dismiss on *forum non conveniens* grounds, agreed with the trial court's reasoning that "the Defendant's state of incorporation ha[d] no rational connection to the cause of action" where the claims arose out of the plaintiffs' exposure to asbestos while working in the defendant's Argentinean textile plants); *Pipal*, 2015

## V.  CONCLUSION

For the reasons above, the Court grants, without prejudice, Development

Max's Motion to Dismiss on *forum non conveniens* grounds.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc      Register in Chancery-K

---

WL 9257869, at *9 ("While the Plaintiff asserts correctly that Delaware has a 'powerful interest' in preventing Delaware entities from being used as a vehicles for wrongdoing, it is India that has an interest in preventing theft of assets in India, and in redressing breaches of contract occurring there." (footnote omitted)).  The Court's ability to oversee and manage the conduct and effectiveness of a receiver for Development Max alleged to operate through a "web" of companies in Ukraine is less than certain, further reducing the appropriateness of this remedy in Delaware.  *Pipal*, 2015 WL 9257869, at *1 (denying the defendant's motion to dismiss on *forum non conveniens* grounds, reasoning in part that, though the allegedly fraudulent activity took place in India (including the development and ultimate theft of a computer application), the wrongdoers "placed the stolen application . . . into a Delaware corporation, . . . [which] marketed the application in the United States and abroad, and has solicited and received investments based on the representation that it owns the [application]").