# IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN RE: TIAA-CREF INSURANCE APPEALS

§
§ Nos. 478, 2017
§ 479, 2017
§ 480, 2017
§ 481, 2017
§
§ Court Below: Superior Court
§ of the State of Delaware
§
§ C.A. No. N14C-05-178
§ CCLD

Submitted: June 6, 2018
Decided: July 30, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

## O R D E R

On this 30th day of July 2018, upon consideration of the parties' briefs, oral argument and the record on appeal, it appears to the Court that:

(1)     This is an insurance coverage case involving four consolidated appeals. In three of the appeals, insurance companies are the Appellants:  Illinois National Insurance Company ("Illinois National"), Ace American Insurance Company ("Ace"), and Arch Insurance Company ("Arch").  The Appellees in those appeals are the insureds:  TIAA-CREF Individual & Institutional Services, LLC; TIAA-CREF Investment Management, LLC; Teachers Advisors, Inc.; Teachers Insurance and Annuity Association of America; and College Retirement Equities Fund

(collectively "TIAA"). The fourth appeal was filed by TIAA. The Appellees in that appeal are Illinois National, Ace, Arch, and Zurich American Insurance Co. ("Zurich").

(2) "TIAA provides retirement accounts, annuities, life and other insurance, and pension plan counseling to employees of colleges, universities, and other institutions."[1] Its entities offer investors the ability to invest in various funds. When investors contribute money to their investment accounts, the contributions purchase shares in the fund selected. Each fund uses the money to invest in a portfolio of stocks, bonds, or real estate. Each fund's share price – or unit value – depends on the fund's investment performance and is calculated daily based on the market value of the fund and the expenses charged to the fund by TIAA. TIAA does not earn profit or incur loss.

(3) An investor wishing to sell shares notifies a TIAA broker-dealer. When such a request is properly submitted to the broker-dealer, the date of submission, or an agreed upon future business day, is referred to as the "good order date." At the times relevant to this litigation, the sale of the investor's shares was not always processed on the good order date. Sometimes it might not be processed until days or weeks later. As a result, the investor's shares could increase (or

---

[1] Illinois National, Ace, and Arch's Opening Br. Regarding Whether TIAA-CREF Suffered Covered "Loss" at 1.

decrease) in value between the good order date and the date the sale was finally processed. The difference in value of the shares between the good order date and the sale date, either positive or negative, is referred to as the Transactional Fund Expense ("TFE"). If the shares increased in value between the good order date and the sale date, there was a TFE gain. If they decreased, there was a TFE loss. After the sale was processed, TIAA would pay the investor the value of the shares as of the good order date. The TFE gains and losses were netted with operational expenses and passed through to all of the remaining investors' accounts. TFE is however, a relatively minor component of each fund's overall expenses and is "de minimis" with respect to each fund's net value.

(4)    In 2007 the first of three class actions was filed against TIAA. The class was investors or former investors who had sold shares with a TFE gain. The plaintiffs sought to recover the TFE gain on behalf of the class. That action, known as the *Rink* action, was settled in 2012.[2] The second and third class actions also involved investors who had sold shares with TFE gain. The second action, filed in 2009, was known as the *Bauer-Ramazani* action.[3] It was settled in 2014. The third class action, known as the *Cummings* action, is still pending, though it is apparently subject to a settlement in principle.[4]

---

[2] *Rink v. CREF*, No. 07-CI-10761 (Ky. Cir. Ct.).
[3] *Bauer-Ramazani v. TIAA-CREF, et al.*, No. 1:09-cv-00190 (D. Vt.).
[4] *Cummings v. TIAA-CREF, et al.*, No. 1:12-cv-93 (D. Vt.).

(5)     TIAA's insurance program for the period relevant to this litigation consisted of claims-made liability insurance.  A primary policy was provided by Illinois National in the amount of $15,000,000, subject to a self-insured retention of $5,000,000.  Rising layers of excess insurance were provided by St. Paul Mercury Insurance Company ($15,000,000), Ace ($15,000,000), Arch ($5,000,000), and Zurich ($15,000,000).  St. Paul settled with TIAA and is not a party to this appeal. Arch also issued a second excess policy with an attachment point of $100,000,000. This second policy is relevant only to the consent to settle defense asserted by Arch. The excess policies follow form to the Illinois National policy.

(6)     In 2007, TIAA gave notice of the *Rink* class action to Illinois National. Illinois National denied coverage, based primarily on a claim that the settlement payments in the *Rink* class action were an uninsurable disgorgement.   The settlement in *Rink* did not reach any of the excess policies.  TIAA gave notice of the *Bauer-Ramazani* class action to Illinois National, Ace, and Arch in 2010. Illinois National denied coverage for that class action raising the same disgorgement defense raised in *Rink*.   Ace and Arch adopted Illinois National's denial of coverage.

(7)     In 2014, after the *Bauer-Ramazani* class action was settled, TIAA filed its initial complaint in this case in Superior Court against Illinois National, St. Paul, Ace, Arch, and Zurich, seeking coverage for the settlement payments it made in the

4

*Rink* and *Bauer-Ramazani* actions. It later amended its complaint to seek coverage for the *Cummings* action.

(8) TIAA and Illinois National agreed, and the Superior Court ruled, that *Bauer-Ramazani* and *Cummings* related back to *Rink*, making all three class actions reviewable for coverage under the 2007-2008 policy year. That ruling is not challenged in this appeal. After further pre-trial rulings and a jury trial, the Superior Court entered judgment in favor of TIAA against Illinois National, Ace, and Arch. Zurich prevailed on the defenses it asserted, lack of notice and failure of TIAA to comply with a consent to settle provision.

(9) The first contention to be considered on appeal is one made by Illinois National, Ace, and Arch. They contend that TIAA did not suffer a "loss" as that term is defined in the policies. Under the policies, "loss" excludes "matters which may be deemed uninsurable under the law pursuant to which" the policy is to be construed.[5] They argue that the class action settlements are "disgorgements," and that under New York law a disgorgement cannot be the subject of an insurance claim as a matter of that state's public policy.[6] All parties agree that New York law applies to this issue. The Superior Court ruled as a matter of law that the class

---

[5] J.A. to Opening Brs. at JA2541.08.
[6] *See, e.g.*, *J.P. Morgan Securities, Inc. v. Vigilant Ins. Co.*, 126 A.D.3d 76 (N.Y. App. Div. 2015); *Reliance Grp. Holdings, Inc. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, PA.*, 594 N.Y.S.2d 20, 24 (N.Y. App. Div. 1993), *appeal denied*, 619 N.E.2d 656 (N.Y. 1993).

action settlements are not disgorgements.[7] Illinois National, Ace, and Arch contend that ruling is error.

(10) The New York cases upon which Illinois National, Ace and Arch principally rely involve regulatory proceedings which resulted in settlements ordering the insured to pay disgorgement damages.[8] It appears that the principle which emerges from these cases is that New York public policy prohibits enforcement of insurance agreements in cases involving disgorgement where the payment is conclusively linked, in some fashion, to improperly acquired funds in the hands of the insured. In this case, TIAA disputed and defended itself against the claims asserted in the class actions, repeatedly asserting that the procedures that resulted in TFE and its treatment were proper and lawful. No finding that the TFE was ill-gotten gain was made in any forum. Nor could one have been. Whether TIAA's allocation of the gains and losses from its policy for handling transfer and sale requests was contractually proper, the reality is that it was a risk sharing arrangement that spread the costs and benefits of that policy among all of the funds'

---

[7] *TIAA-CREF Individual & Institutional Servs., LLC v. Illinois Nat'l Ins. Co.*, 2016 WL 6534271, at *12 (Del. Super. Ct. Oct. 20, 2016), *appeal refused*, 151 A.3d 899 (Del. 2016).

[8] *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 2003 WL 24009803 (N.Y. Sup. Ct. Jul 8, 2003), *affirmed by*, 10 A.D.3d 528 (N.Y. App. Div. 2004); *Millennium Partners, L.P. v. Select Ins. Co.*, 882 N.Y.S.2d 849 (N.Y. Sup. Ct. March 9, 2009) (Slip. Op.), *affirmed by*, 889 N.Y.S.2d 575 (N.Y. App. Div. 2009); *Bear Wagner Specialists, LLC v. Nat'l. Union Fire Ins. Co. of Pittsburgh, PA*, 2009 WL 2045601 (N.Y. Sup. Ct. July 7, 2009); *J.P. Morgan Securities Inc. v. Vigilant Ins. Co.*, 91 A.D.3d 226 (N.Y. App. Div. 2001), *reversed by*, 992 N.E.2d 1076 (N.Y. 2013); *J.P. Morgan Securities, Inc. v. Vigilant Ins. Co.*, 126 A.D.3d 76 (N.Y. App. Div. 2015).

investors, and did not create an opportunity for TIAA to profit at its investors' expense. To this point, it is likely that members of the plaintiff classes, as investors, did not just incur costs from the policy, but also benefitted. And it is further undisputed that the dollar figures implicated by the policy were de minimis when considered as a percentage of the investors' overall economic interests in the funds. Under these circumstances, we conclude that the Superior Court was correct in distinguishing the New York cases barring insurability, which proscribe it in situations in which the insured's wrongdoing resulted in ill-gotten gains, and finding that TIAA established that New York's public policy against enforcing insurance agreements in cases of disgorgement does not apply to the facts of this case.

(11) Illinois National and Arch next contend that the Superior Court erred by awarding unreasonable and unnecessary defense costs for the *Bauer-Ramazani* action. The issue of TIAA's defense costs was presented to the jury at trial. TIAA sought to recover $7,519,822.91 as defense costs in connection with the *Bauer-Ramazani* action for work performed by different law firms, including Downs Rachlin Martin PLLC, a Vermont firm, and the Washington, D.C. office of O'Melveny & Myers. The *Bauer-Ramazani* action took place in Vermont. When TIAA rested its case on direct at trial, Illinois National and Arch moved for judgment as a matter of law, arguing that TIAA had not satisfied its burden of establishing that the defense costs for *Bauer-Ramazani* were reasonable and necessary. The

7

Superior Court reserved decision on the motion. The jury awarded TIAA the entire $7,519,822.91. After trial Illinois National and Arch filed renewed motions for judgment as a matter of law. The Superior Court denied the motions.

(12) The evidence presented by TIAA in support of its claim for defense costs in the *Bauer-Ramazani* action included the testimony of Theresa Gee, a former O'Melveny & Myers lawyer, and expert Leif Clark, a former federal bankruptcy judge. TIAA also introduced three binders of defense invoices and payment confirmations. On appeal, Illinois National and Arch argue that TIAA failed to meet its burden of establishing that the fees were reasonable and necessary and did not present testimony from any witness who was responsible for retaining counsel, negotiating the rates in question, or reviewing the defense bills for reasonableness and necessity. They further argue that TIAA's expert made no adjustments whatsoever and agreed that had he made the effort to review all the bills, he would have found reductions for what he agreed were unreasonable billing practices. They further argue that the Superior Court should not have allowed recovery for fees (the "O'Melveny fees") that were double and triple the rates charged in the locality.

(13) Ms. Gee gave detailed testimony regarding the O'Melveny & Myers lawyers, and the nature and extent of the work that needed to be performed. The *Bauer-Ramazani* action involved multiple allegations of ERISA violations, which justified the hiring of the specialized ERISA practice group in O'Melveny's

8

Washington, D.C. office. In addition, despite the contentions of Illinois National and Arch, the record shows that Mr. Clark expressed the opinion that the defense costs were reasonable and necessary and he saw no reason to reduce the bills. A review of his testimony shows that he adequately explained the basis for his opinion. The Superior Court did not err in denying Illinois National's and Arch's renewed motions for judgment as a matter of law. Their contention that TIAA did not meet its burden to prove that the defense costs in connection with the *Bauer-Ramazani* action were reasonable and necessary is rejected.

(14) Next, Arch contends that the Superior Court erred by failing to grant it summary judgment or post-trial judgment on its defense that TIAA failed to obtain its consent to settle for the *Rink* and *Bauer-Ramazani* settlements. It also contends that the Superior Court made various trial errors with respect to its defense of consent. It also contends that the Superior Court erred when it determined the amount of a limits reduction under a provision known as a shavings provision. Arch describes its appeal on these issues as follows:

> Arch now appeals the following: (1) denial of Arch's Motion for Summary Judgment; (2) denial of Arch's motions *in limine*; (3) denial of Arch's Motion for Judgment as a Matter of Law; (4) rulings regarding jury instructions, the inclusion of the 'futility' question, and the burden of proof for futility; (5) allowing deposition testimony from other insurers on Arch's consent issue; (6) the jury verdict against Arch following trial; (7) denial of Arch's renewed motion for judgment as a matter of law and alternative motion for a new trial; (8) the portion of the opinion and order on TIAA's motion for final order and judgment

that determined the size of Arch's limits reduction; and (9) the Order and Certified Final Judgment Pursuant to Rule 54(b).[9]

(15)    The jury's verdict included findings that Arch had waived its consent to settle condition as to both the *Ring* and the *Bauer-Ramazani* settlements.   It also included findings that it reasonably appeared to be futile for TIAA to request Arch's consent for either settlement.   In a post-trial ruling on Arch's motion for judgment as a matter of law, the Superior Court analyzed the consent condition issue as follows:

> In its Renewed Motion, Arch argues that the Court should grant it JMOL because no reasonable jury could have found that [TIAA] was excused from seeking Arch's consent to settle the *Rink* and *Bauer-Ramazani* Actions, or that Arch waived its right to consent to the settlements.   In support of this argument, Arch characterizes [TIAA's] case against it as 'predicted chiefly on two pieces of evidence—Arch's closure of its files for *Rink* [January 29, 2008 *Rink* closure letter] and Arch's June 7, 2013 letter addressing *Bauer*.   According to Arch, because the January 29, 2008 *Rink* closure letter concerns the higher layer "BFI Policy,' a layer not at issue in this action, and because the letter contains reservation of rights language, 'no reasonable juror could have found that Arch waived its consent rights.'[10]   Similarly, with regard to the June 7, 2013 letter, in which Arch adopted Illinois National's 'no coverage' position for *Bauer-Ramazani*, Arch argues its reservation of rights language precludes any findings in [TIAA's] favor on Arch's consent defense.
>
> As to the *Rink* Action, among other evidence, the jury heard evidence that: Arch closed both its *Rink* files; [TIAA] updated Arch regarding the *Rink* Action over the course of the litigation; after receiving notice of the *Rink* settlement, Arch did not object; and the total costs of the

---

[9]  Appellant Arch Ins. Co.'s Opening Br. Regarding Consent to Settle and Reduction of Insurance Limits at 3–4.

[10]  The "BFI Policy" is the Arch policy that attached at $100,000,000.

*Rink* Action settlement and defense fell below Arch's attachment point.

As to the *Bauer-Ramazani* Action, among other evidence, the jury heard evidence that: [TIAA] sent updates to Arch regarding the *Bauer-Ramazani* Action; prior to mediation in the *Bauer-Ramazani* Action, [TIAA] told Arch that 'we will need to decide on settlement authority for the purpose of negotiating,' whereupon Arch adopted Illinois National's April 23, 2013 coverage denial letter; and after receiving notice of the *Bauer-Ramazani* settlement, Arch did not object.

Arch's boilerplate general reservation of rights in the January 29, 2008 and June 7, 2013 letters does not preclude the jury from considering Arch's other actions or inactions in determining whether it would have been futile for [TIAA] to seek Arch's consent or whether Arch waived its rights, notwithstanding its purported reservation.

Viewing the evidence in the light most favorable to [TIAA], the Court finds that the evidence and all reasonable inferences that can be drawn therefrom could justify a jury verdict in favor of [TIAA] on these issues, and therefore, Arch's Renewed Motion for JMOL is **DENIED**.[11]

We agree with the Superior Court that there was sufficient evidence to submit the issue of waiver to the jury and to support the jury's finding. Since no error exists on the issue of waiver, error on the issue of futility, if any, is harmless.

(16) With regard to the shavings provision, Arch's policy provides that its limits of liability shall be reduced by "at least the largest percentage savings of the Underlying Insurance's Limit(s) of Liability as provided in the Limit Reduction Agreements applicable to such Claim."[12] The Limit Reduction Agreement referred

---

[11] The trial judge's footnotes have been omitted. *TIAA-CREF v. Illinois Nat'l Ins. Co.*, 2017 WL 3085324, at *5–6 (Del. Super. Ct. June 29, 2017).

[12] J.A. to Opening Brs. at JA0518.

to is the settlement agreement between the insured and an underlying insurer. St. Paul settled for $12,900,000. As mentioned, its policy limit was $15,000,000. The Superior Court used the $12,900,000 settlement amount and the $15,000,000 policy limit to calculate a "percentage savings" of 14%. Arch contends that the total claim was $18,920,923.10, consisting of the $15,000,000 limit and $3,920,923.10 of prejudgment interest, and that the "percentage savings" should have been calculated on the $18,920,923.10, which would give a 32% "percentage savings." But Arch's policy shaves its liability in relation to an underlying insurer's percentage reduction in its liability cap, not in relation to the discount an underlying insurer receives on the overall claims against it. For this reason, we see no error in the Superior Court's interpretation of the "percentage savings of the Underlying Insurance's Limits of Liability" as being the principal settlement amount's percentage of the limit of liability, in this case 14%.

(17) We have examined all of Arch's remaining claimed errors and find that none have merit.

(18) We now turn to TIAA's appeal. It makes two claims. It claims that the Superior Court committed error when it failed to award prejudgment interest against Ace and Arch. Second, it claims that the Superior Court committed error by: (1) failing to rule before trial that Zurich waived its notice and consent to settle defenses; and (2) incorrectly instructing the jury on Zurich's burden of proof.

12

(19)   TIAA claims that it is entitled to prejudgment interest against Ace and Arch under New York law.   It relies upon N.Y. C.P.L.R. § 5001, which reads, in pertinent part, as follows:

> (a) . . . Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
>
> (b) . . . Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred . . . .[13]

The Superior Court analyzed the issue as follows:

> [TIAA's] argument that ACE and Arch are illegitimately attempting to take advantage of Illinois National's breach of contract has considerable rhetorical force.   However, ACE and Arch's ability to wait out good faith coverage disputes without breaching their own performance obligations is a benefit conferred upon them by the terms of the attachment provisions, regardless of whether the underlying insurer(s) have wrongfully denied coverage.   ACE and Arch's performance obligations have not yet been triggered, and the purposes served by prejudgment interest in other cases do not give the Court license to ignore the terms of the ACE and Arch Excess Policies or to ignore the fact the prejudgment interest statute requires that the Court award a sum for breach of performance.   In light of the foregoing, the Court does not currently have a basis to enter a damages judgment against ACE and Arch for breach of contract.   This fact necessarily precludes any award of prejudgment interest against Ace and Arch for breach of contract under Section 5001(a).[14]

---

[13] N.Y. C.P.L.R. § 5001 (a)–(b).

[14] *TIAA-CREF Individual & Institutional Servs., LLC v. Illinois Nat'l Ins. Co.*, 2017 WL 5197860, at *8 (Del. Super. Ct. Oct. 23, 2017).

13

We agree that under the attachment provisions in the Ace and Arch policies, prejudgment interest does not run against them until their performance obligations have been triggered. And Ace and Arch's performance obligations have not been triggered because the insurance tiers underlying their policies have not yet paid out. This conclusion is strengthened by the shavings provisions contained in both the Ace and Arch policies. Under the shavings provisions, Ace and Arch's liability caps are subject to change should any underlying insurers settle with TIAA and incur a percentage savings. Therefore, not only are Ace and Arch's performance obligations not yet triggered, they are also still uncertain. The presence of the shavings provisions here, alone, distinguishes the case chiefly relied upon by TIAA, *J.P. Morgan Securities, Inc. v. Vigilant Insurance Co.*, which makes no mention of a shavings provision.[15] The Superior Court also correctly ruled that Illinois National was not liable for consequential damages if TIAA was not entitled to prejudgment interest against Ace and Arch for the reasons given in its October 23, 2017 opinion.[16]

(20) Finally, we address TIAA's claims of error as regards Zurich. Zurich claimed that TIAA failed to comply with the notice and consent to settle conditions contained in the Zurich policy. TIAA's response was that Zurich waived those

---

[15] 2017 WL 3448370 (N.Y. Sup. Ct. Aug. 7, 2017).
[16] *TIAA-CREF*, 2017 WL 5197860.

conditions. It filed a motion *in limine* asserting that the defenses had been waived. The motion was denied. It renewed the issue in a motion for judgment as a matter of law. The Superior Court denied that motion as well. TIAA contends that the Superior Court erred by not ruling that the defenses had been waived. It also argues that the Superior Court erred by giving an incorrect jury instruction.

(21) The *Bauer-Ramazani* settlement was the one that brought Zurich's policy into play. In its original complaint, TIAA alleged that it had given proper and timely notice of the *Bauer-Ramazani* settlement to all insurers including Zurich. In its answer, Zurich expressly denied that allegation. It also pled that TIAA had failed to satisfy conditions precedent to coverage, and that all such conditions were reserved and not waived. It is now undisputed that the original complaint was the first notice given to Zurich. The jury rendered a verdict for Zurich, finding that it had not waived either condition.

(22) In this case, the only argument that Zurich waived its consent defense is that Zurich did not preserve that defense in its original answering pleadings. As a result, the question of waiver was, in our view, properly a matter of Delaware procedural law, not substantive New York insurance law, and it was within the Superior Court's discretion to find, as it in essence did, that Zurich did not waive its consent defense by not more clearly making its position on that issue known earlier

in the litigation.[17]   TIAA also argues that the Superior Court erred by instructing the jury that TIAA's burden of showing waiver was by clear and convincing evidence. Waiver is the intentional relinquishment of a known right.[18]   TIAA could not make such a showing under the facts of this case, as the Superior Court's findings illustrated.   Any error in the jury instructions, if any, is harmless.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

[17] 2 COUCH ON INS. § 24:34 (3d. 2017) ("While the laws of another state may govern the substantive rights of the parties, such as construction of the policy, matters pertaining to remedies, procedure, and evidence are ordinarily governed by the law of the forum."); *Martinez v. E.I. DuPont De Nemours & Co., Inc.*, 82 A.3d 1, 14 n.36 (Del. Super. Ct. 2012), *aff'd*, 86 A.3d 1102 (Del. 2014), *as revised* (Mar. 4, 2014) ("Plaintiff refers to Argentine law to support the adequacy of its pleadings.   Since the governing rules of pleading are procedural, not substantive, Delaware Superior Court Civil Rules apply.").

[18]   *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.,* 871 A.2d 428, 444 (Del. 2005).