**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

NATIONAL UNION FIRE INSURANCE ) 
COMPANY OF PITTSBURGH, PA., *et al.*, ) 
                                ) 
          Plaintiffs, ) 
                                  ) 
         v. )   C.A. No. N19C-04-089 EMD CCLD 
                                  ) 
AXIALL CORPORTATION and ) 
WESTLAKE CHEMICAL CORPORATION, ) 
                                  ) 
          Defendants. )

Submitted:  September 3, 2019
Decided:  September 11, 2019

**ORDER DENYING PLAINTIFFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OF THE COURT'S AUGUST 1, 2019 RULING AND AUGUST 12, 2019 ORDER**

This 11th day of September, 2019, upon consideration of Plaintiffs' Motion for Certification of Interlocutory Appeal (the "Motion") filed by Plaintiffs National Union Fire Insurance Company of Pittsburgh, Pa., Allianz Global Risks US Insurance Company, ACE American Insurance Company, Zurich American Insurance Company, Great Lakes Insurance SE, XL Insurance America , Inc., General Security Indemnity Company of Arizona, Aspen Insurance UK Limited, Navigators Management Company, Inc., Ironshore Specialty Insurance Company, Validus Specialty Underwriting Services, Inc., and HDI-Gerling America Insurance Company (collectively, the "Insurers") on August 22, 2019; Defendants' Opposition to Plaintiffs' Motion for Certification of Interlocutory Appeal (the "Response") filed by Defendants Axiall Corporation ("Axiall") and Westlake Chemical Corporation ("Westlake" and collectively, the "Insureds") on September 3, 2019; the Court's decision rendered at the August 1, 2019 hearing and Order dated August 12, 2019 (collectively, the "Opinion"); Supreme Court Rule 42 ("Rule 42"); and this civil action's entire record:

## BACKGROUND

1.      In 1943 a chemical manufacturing facility (the "Natrium Plant"), was constructed in Marshall County, West Virginia, along the banks of the Ohio River.[1] The Natrium Plant has approximately 425 employees and manufactures a number of chemicals, including chlorine.[2] Before September 2016, Axiall owned the Natrium Plant.[3] On or about September 1, 2016, Westlake acquired Axiall and the Natrium Plant.[4]

2.      Axiall is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Texas.[5] Westlake is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Texas.[6]

3.      The Insurers, as a subscribing quota share Market, issued 13 separate policies of commercial property insurance to Axiall insuring its various properties, including the Natrium Plant.[7] The Insurers maintained policies (each, a "Policy," and jointly, the "Insurance Policies") with the following companies: National Union Fire Insurance Company of Pittsburgh, Pa.;[8] Allianz Global Risks US Insurance Company;[9] ACE American Insurance Company;[10] Zurich American Insurance Company;[11] Great Lakes Insurance SE;[12] XL Insurance America, Inc.;[13]

---

[1] Compl. ¶ 26-27.
[2] Stay Motion at 6.
[3] Compl. ¶ 15.
[4] *Id.*
[5] "At the time the Policy was issued, as well as at the time of the involved chlorine release incident, Axiall's principal place of business was in Georgia. After Westlake's purchase, the principal place of business was moved to Texas." Compl. n. 2.
[6] Compl. ¶ 15.
[7] Compl. ¶ 20.
[8] Pennsylvania business with its principal place of business in New York. Compl. ¶ 2.
[9] Illinois business with its principal place of business in Illinois. Compl. ¶ 3.
[10] Pennsylvania business with its principal place of business in Pennsylvania. Compl. ¶ 4.
[11] New York business with its principal place of business in Illinois. Compl. ¶ 5.
[12] A foreign business entity organized and existing under the laws of Germany with its principal place of business in Munich. Compl. ¶ 6.
[13] Delaware business with its principal place of business in Connecticut. Compl. ¶ 7.

General Security Indemnity Company of Arizona;[14] Aspen Insurance UK Limited;[15] Navigators Management Company, Inc.;[16] Ironshore Specialty Insurance Company;[17] Validus Specialty Underwriting Services, Inc. (f/k/a Talbot Underwriting Services (US) Ltd.);[18] and HDI-Gerling America Insurance Company.[19] Axiall and Westlake are the named Insured in all of these policies.[20] Axiall and Insurers contractually agreed in the Policy that "[a]ny dispute concerning or related to this insurance will be determined in accordance with the laws of the State of Georgia. Any disputes between the Assured and [Insurers] over the terms of this Policy shall be subject to the United States of America jurisdiction."[21]

4.      On August 27, 2016, a fully-loaded tank car[22] at the Natrium Plant experienced a 42-inch long crack in its tank shell.[23] The crack resulted in the release of approximately 178,400 pounds (approximately 90 tons) of liquefied chlorine and a cloud of vaporized chlorine that traveled downwind through the Natrium Plant (the "Loss").[24] The chlorine cloud damaged

---

[14] Arizona business with its principal place of business in New York. Compl. ¶ 8.

[15] A foreign business entity organized and existing under the laws of England and Wales with its principal place of business in London. Compl. ¶ 9.

[16] An underwriting management company designated to underwrite policies on behalf of Certain Underwriters at Lloyd's, London.  Navigators is considered to be the service company coverholder under the Certificate of Insurance evidencing placement of insurance with Lloyd's Syndicates 1221, 1897, and 4000 subscribing to Policy No. 15NMNY1422-01.  Navigators is a domestic business entity organized and existing under the laws of the State of New York with its principal place of business in Connecticut. Compl. ¶ 10.

[17] Arizona business with its principal place of business in Massachusetts. Compl. ¶ 11.

[18] A Managing General Agent designated to underwrite policies on behalf of Certain Underwriters at Lloyd's, London.  Validus is considered to be the service company coverholder under the Certificate of Insurance evidencing placement of insurance with Lloyd's Syndicate 1183, subscribing to Policy No. AJC096910G15.  Validus is a domestic business entity organized and existing under the laws of the State of Delaware with its principal place of business in New York. Compl. ¶ 12.

[19] Illinois business with its principal place of business in Illinois. Compl. ¶ 13.

[20] The policy applies automatically to "the interests of any parent, trust, corporation, owner, entity or individual in the Named Assured which either has existed, exists now or may exist in the future." Compl. Ex. A. at p. 1 of 65 (National Union Policy No. 020786808).

[21] Compl. Ex. A. at p. 31 of 65 (National Union Policy No. 020786808).

[22] Third-party contractors had previously taken the tank car, which cracked and caused the Loss, out of service for corrosion repairs and other maintenance work in early-to-mid 2016. Compl. ¶ 30.

[23] Compl. ¶ 29.

[24] Compl. ¶¶ 29, 31; Stay Motion at 6.

3

mechanical and electrical equipment and machinery and other property at the Natrium Plant.[25] In addition, neighboring property owners in West Virginia and across the river in Ohio have asserted that the chlorine damaged their property.[26] Following the Loss, the Natrium Plant shut down for 30 days while the National Transportation Safety Board took control of the scene and investigated the cause of the Loss.[27] After the 30 days, the Natrium Plant re-opened and currently remains in operation.[28]

5. On August 30, 2016, the Insureds notified the Insurers of the Loss.[29] An investigation ensued. On January 18, 2018, the Insurers, through their appointed adjuster, issued a reservation of rights letter to the Insureds.[30] The Insurers continued to investigate the claims and ask for additional information. On April 8, 2019, in a letter to the Insureds, the Insurers stated that they "deny coverage under the Policy for the claims presented" and informed the Insureds that they "have initiated declaratory judgement proceedings in the Delaware Superior Court."[31]

6. On April 9, 2019, the Insurers filed the Complaint for Declaratory Judgement (the "Complaint") in the Court. On April 10, 2019, the Insureds filed a Complaint against the Insurers in the Circuit Court of Marshall County, West Virginia (the "West Virginia Action").[32]

7. On May 17, 2019, the Insureds filed the Opening Brief in Support of Defendants' Motion to Dismiss or Stay for *Forum Non Conveniens* (the "Stay Motion"). On June 21, 2019, the Insurers filed Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss or

---

[25] Stay Motion at 6.
[26] Westlake has paid some of those claims, while others are in litigation pending in Marshall County, West Virginia. Stay Motion at 6.
[27] Compl. ¶ 32.
[28] *Id.*
[29] Compl. ¶ 33.
[30] Compl. ¶ 36.
[31] Opposition to Stay Motion, Ex. I.
[32] *See* Stay Motion Ex. C.

Stay for *Forum Non Conveniens*. Finally, on July 12, 2019, the Insureds filed a Reply Brief in Support of Defendants' Motion to Dismiss or Stay for *Forum Non Conveniens*. The Court held a hearing on the Stay Motion on August 1, 2019 (the "Hearing").

8.     At the conclusion of the Hearing, the Court took a recess and then came back and rendered, on the record, its decision on the Stay Motion.[33] The Court entered an Order on August 12, 2019. The August 12, 2019 Order incorporates the Court's August 1, 2019 ruling.

### PARTIES CONTENTIONS

9.     As set forth in the Opinion, the Court applied the Delaware *forum non conveniens* test and found that the facts supported a stay of this civil action in favor of the West Virginia Action.[34] The Insurers seek interlocutory appeal on two issues: (i) the Opinion determines a substantial issue of material importance; and (ii) the Court's Opinion grants the stay without "the requisite showing of overwhelming hardship" in conflict with prior decisions in *BP Oil Supply Co. v. ConocoPhillips Co.*[35] and *In re Citigroup Shareholder Derivative Litig.*[36] The Insurers, essentially, assert that the Motion meets the criteria set forth only in Rule 42(b)(i) and 42(b)(iii)(B).[37]

10.     The Insureds opposed interlocutory appeal of the Opinion. In the Response, the Insureds argue that the Opinion does not decide issues of first impression or is in conflict with the decisions of other Delaware trial courts.

---

[33] A copy of the Court's August 1, 2019 ruling is attached to the Motion as Exhibit B.
[34] Motion, Ex. B at 74-95.
[35] 2010 WL 702382, at *2-3 (Del. Super. Feb. 25, 2010).
[36] 964 A.2d 106, 116-19 (Del. Ch. 2009).
[37] *Id.*

5

## APPLICABLE STANDARD

11.    Rule 42(b) dictates the standard for certifying an interlocutory appeal.  "No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[38]  In deciding whether to certify an interlocutory appeal, the trial court must consider: (1) the eight factors listed in Rule 42(b)(iii);[39] (2) the most efficient and just schedule to resolve the case; and (3) whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.[40]  "If the balance [of these considerations] is uncertain, the trial court should refuse to certify the interlocutory appeal."[41]

## DISCUSSON

12.    The Court agrees with the arguments made in the Response.  Moreover, the Court does not agree with the Insurers' characterization of the holding in the Opinion.

13.    Initially, the Court must determine whether the Opinion "decides a substantial issue of material importance that merits appellate review before a final judgment."[42]  The

---

[38] Del. Supr. Ct. R. 42(b)(i).
[39] Delaware Supreme Court Rule 42(b)(iii) provides that the trial court should consider whether;
    (A) The interlocutory order involves a question of law resolved for the first time in this State;
    (B) The decisions of the trial courts are conflicting upon the question of law;
    (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;
    (D) The interlocutory order has sustained the controverted jurisdiction of the trial court;
    (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;
    (F) The interlocutory order has vacated or opened a judgment of the trial court;
    (G) Review of the interlocutory order may terminate the litigation; or
    (H) Review of the interlocutory order may serve considerations of justice.  *See* Del. Supr. Ct. R. 42(b)(iii).
[40] *Id.*
[41] *Id.*
[42] *Id.* 42(b)(i).

6

"substantial issue of material importance" prong of Rule 42 requires that the matter decided goes to the merits of the case.[43] As set forth in the Motion, the Supreme Court has previously engaged in interlocutory review of a trial court's ruling on forum disputes.[44] In the absence of "exceptional circumstances," however, the Supreme Court has refused to accept interlocutory appeals from decisions on such motions to stay.[45]

14.    The Insurers have not identified any exceptional circumstances present in this case. The Insurers argue that a stay is "tantamount to dismissal" because the West Virginia Action will be asked to decide the same issues raised in this civil action. However, the Insurers have not obtained a stay in the West Virginia Action. Accordingly, the West Virginia Action is proceeding in the ordinary course and, if the West Virginia court determined any issue before this Court, then preclusion could apply. But, that is true in any situation where two identical actions are pending in different courts. If the Court had not stayed or dismissed this civil action, then the parties would be "racing" issues for determination in either West Virginia or Delaware. The Court does not see how this presents exceptional circumstances. It is not as if the West Virginia court would be applying Delaware law or some other highly unusual situation. Instead, the two cases involve the same Policy and that Policy is governed by Georgia law and will

---

[43] *Id.*

[44] *See, e.g., McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970); *General Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

[45] *See, e.g., Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *2 (Del. Ch. July 22, 2008)(denying interlocutory appeal on decision relating to forum non conveniens where party failed to demonstrate "exceptional circumstances"); *see also Derdiger v. Tallman*, 2000 WL 1589929, at *1 (Del. Aug. 29, 2000) (TABLE) (refusing appeal of Court of Chancery decision staying a Delaware action under the first-filed doctrine in favor of an earlier action in California); *Fleming & Hall, Ltd. v. Clarendon Nat'l Ins. Co.*, 1998 WL 985342, at *1 (Del. Nov. 16, 1998) (TABLE) (refusing appeal of Superior Court decision granting motion to stay pending outcome of a related arbitration proceeding in New York); *Berman Real Estate Dev., Inc. v. Berdel, Inc.*, 1995 WL 788597, at *1 (Del. Dec. 6, 1995) (TABLE) (refusing appeal of Court of Chancery decision denying motion to stay a Delaware action pending the outcome of another action in Pennsylvania on forum non conveniens grounds); *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 1995 WL 6224452, at *1 (Del. Oct. 5, 1995) (TABLE) (refusing appeal of Superior Court decision staying a Delaware proceeding in favor of a first-filed California action).

involve facts that all occurred outside of Delaware. Nothing here is exceptional. Accordingly, the Court finds that the Insurers have not satisfied Rule 42(b)(i).

15.     Even if Rule 42(b)(i) were satisfied, the Court is not convinced that the Insurers can satisfy any factors listed in Rule 42(b)(iii), including Rule 42(b)(iii)(B). The Court does not find that the issues decided in the Opinion present a situation where the Delaware trial courts have issued conflicting decisions on the same issue of law. The *forum non conveniens* law in Delaware is quite settled. What the Insurers are really contending is the Court just got it wrong in applying the *forum non conveniens* standard to this case.

16.     "When actions are contemporaneously filed, the standard of proof for a dismissal is 'overwhelming hardship,' and on a motion to stay, the standard is a 'balancing test' of the *Cryo–Maid* factors."[46] However, "where a stay will likely have substantially the same effect as a dismissal, the defendant must show that one or more of the factors, either separately or together, would subject the defendant to sufficient hardship to warrant staying the proceedings."[47] The Delaware Supreme Court has noted that while the *Cryo-Maid* factors are applied under the "overwhelming hardship" standard, this "standard is not intended to be preclusive."[48]

17.     The Court determined that, based on its analysis of the *forum non conveniens* factors set forth in *Cryo-Maid*, the Insureds did not show they would be subjected to "overwhelming hardship" by litigating this case in Delaware such as to warrant dismissal. But, the Court also determined that *ALL* of the *Cryo-Maid* factors were either neutral or tilt in favor of West Virginia. Given the similarities to the decision in *National Union Fire Insurance Co. of*

---

[46] *See Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *6 (Del. Super. July 26, 2005).
[47] *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 111, 117 (Del. Ch. 2009); *see BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2.
[48] *Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1105 (Del. 2014).

8

*Pittsburgh, PA., et. al. v. Crosstex Energy Services, L.P.*[49] and the fact that the *forum non conveniens* factors favor the West Virginia Action, the Court found that the Insureds would be subjected to sufficient a hardship that a stay of this case was warranted.

18.     Other important factors weigh against certification. For example, the promotion of judicial efficiencies. The Court does not find that an interlocutory appeal will terminate the litigation. Whatever the result of the interlocutory appeal, the West Virginia Action will proceed and that means two parallel actions will go forward with duplicate filings and potential inconsistent rulings or verdicts with predictable arguments regarding the potential preclusive effects of those decisions. The Court, therefore, does not believe certification would promote the most efficient and just method to resolve this case.

19.     Accordingly, the likely benefits of interlocutory review do not outweigh the probably costs, such that interlocutory review is in the interests of justice. The Court finds, therefore, that Insurers have not met Rule 42's strict standards for certification.

**CONCLUSION**

**IT IS HEREBY ORDERED** that certification to the Supreme Court of the State of Delaware for disposition in accordance with Supreme Court Rule 42 is **DENIED.**

Dated:  September 11, 2019
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

---

[49] 2013 WL 6598736, *1 (Del. Super. Dec. 13, 2013).

9